Citation Nr: 1532792 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 11-11 363 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Whether the reduction of the evaluation for status post lung cancer with sleep apnea, from 100 percent to 50 percent was proper.

2. Entitlement to a rating in excess of 50 percent for status post lung cancer with sleep apnea.


REPRESENTATION

Appellant represented by: Calvin Hansen, Attorney at Law


ATTORNEY FOR THE BOARD

James A. DeFrank, Counsel





INTRODUCTION

The Veteran had active service from April 1966 to September 1969.

This appeal comes to the Board of Veterans' Appeals (Board) from an October 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska, that granted service connection for sleep apnea and assigned a 50 percent rating effective September 7, 2010. 

A January 2011 rating decision found that there was clear and unmistakable error in the assignment of the separate 50 percent rating for sleep apnea as the October 2010 rating decision erroneously rated the sleep apnea disability together with the already service-connected status post lung cancer. The decision then reduced the rating of the Veteran's service-connected status post lung cancer with sleep apnea from 100 percent to 50 percent effective November 23, 2010.

In March 2014, the Board determined that there was no legal basis for the assignment of a separate compensable rating for sleep apnea. Notably, the Veteran was service-connected for two respiratory disabilities, status post lung cancer and sleep apnea and when rating coexisting respiratory disabilities, a single rating will be assigned under the diagnostic code which indicates the predominant disability. 

The Board also remanded the above issue for additional development.

The Board notes that there is an electronic claims file associated with the Veteran's claim, which contains relevant evidence that will be considered by the Board in this appeal.





FINDINGS OF FACT

1. In a January 2011 decision, the RO reduced the rating for the Veteran's service-connected status post lung cancer with sleep apnea disability from 100 percent disabling to 50 percent disabling from November 23, 2010. 

2. The RO was not required to notify the Veteran of the proposed rating reduction in accordance with 38 C.F.R. § 3.105(e) because the action did not result in a reduction of compensation payments being made at that time.

3. At the time of the reduction, a 100 percent rating for the Veteran's service-connected status post lung cancer with sleep apnea disability had been in effect less than five years.
 
4. There has been no evidence of malignant neoplasms, local recurrence, or metastasis of lung cancer.

5. The reduction for the Veteran's status post lung cancer with sleep apnea disability was based on a reexamination as well as treatment records that showed material and sustained improvement.

6. Prior to January 28, 2014, the Veteran's service connected lung disability was not manifested by post-bronchodilator FEV-1 readings of 55 percent or less.

7. On January 28, 2014, a post-bronchodilator FEV-1 reading of 50 percent is recorded. 

8. From June 13, 2014, the Veteran's service connected lung disability was not manifested by post-bronchodilator FEV-1 readings of 55 percent or less.

9. The Veteran's service connected lung disease is not shown to have been manifested by FEV-1/FVC, or DLCO (SB) less than 55 percent predicted, or; maximum exercise capacity less than 15 ml/kg/min oxygen consumption (with cardiac or respiratory limitation), or; cor pulmonale (right heart failure), or; right ventricular hypertrophy, or; pulmonary hypertension (shown by Echo or cardiac catheterization), or; episode(s) of acute respiratory failure, or; to have required outpatient oxygen therapy.

10. The Veteran's residuals of lung cancer with sleep apnea does not result in chronic respiratory failure with carbon dioxide retention or cor pulmonale, or tracheostomy. 


CONCLUSIONS OF LAW

1. The reduction in the rating for a thoracic spine disability from 100 to 50 percent, effective from November 23, 2010, was proper. 38 U.S.C.A. § 5112 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.105, 3.343, 3.344(c), 4.71a, Diagnostic Codes 6918, 6844, General Rating Formula for Restrictive Lung Disease (2014).

2. For the period from November 23, 2010 to January 28, 2014, the criteria for a rating in excess of 50 percent for the service-connected status post lung cancer with sleep apnea have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.14, 4.21, 4.96, 4.97, Diagnostic Code 6844, General Rating Formula for Restrictive Lung Disease (2014).

3. For the period from January 28, 2014, to June 13, 2014, the criteria for a 60 percent rating, but no greater, for the service-connected status post lung cancer with sleep apnea have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.14, 4.21, 4.96, 4.97, Diagnostic Code 6844, General Rating Formula for Restrictive Lung Disease (2014).

4. For the period from June 13, 2014, the criteria for a rating in excess of 50 percent for the service-connected status post lung cancer with sleep apnea have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.14, 4.21, 4.96, 4.97, Diagnostic Code 6844, General Rating Formula for Restrictive Lung Disease (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). See also 73 Fed. Reg. 23,353-23,356 (April 30, 2008) (concerning revisions to 38 C.F.R. § 3.159). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical evidence or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Notice should be sent prior to the appealed rating decision or, if sent after the rating decision, before a readjudication of the appeal. A Supplemental Statement of the Case, when issued following a notice letter, satisfies the due process and notification requirements for an adjudicative decision for these purposes. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

Regarding the reduction of the rating for status post lung cancer with sleep apnea from 100 percent to 50 percent effective November 23, 2010, this action was not prompted by a claim submitted by the Veteran, but instead was undertaken as a result of a review of the evidence in connection with an increased rating claim. The VCAA does not apply to issues involving a rating reduction as the regulations pertaining to the reduction of evaluations for compensation contain certain notification and due process requirements. 38 C.F.R. § 3.105(e), (i). However, as discussed below, these regulations are not for application in this case.

Regarding the increased rating claim, in a February 2010 letter, the RO explained what information and evidence was needed to substantiate a claim for service connection as well as what information and evidence must be submitted by the Veteran, and what information and evidence would be obtained by VA. The February 2010 letter provided the Veteran with information pertaining to the assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matters on appeal. Pertinent medical evidence associated with the claims file consists of private, service, VA treatment records and the reports of February 2010, September 2010 and November 2010 VA examinations. The February 2010, September 2010 and November 2010 VA examination reports reflect that the VA examiners reviewed the Veteran's past medical history, recorded his current complaints, conducted an appropriate evaluation of the Veteran, and rendered an appropriate diagnosis and opinion consistent with the remainder of the evidence of record. As such, the Board finds that the February 2010, September 2010 and November 2010 VA examinations are sufficient upon which to base a decision with regard to these claims. See 38 C.F.R. § 4.2 (2014); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

The Board notes that per the March 2014 Board remand instructions, the Veteran was scheduled for a VA examination in June 2014 to assess the current severity of his service-connected status post lung cancer with sleep apnea. However, the June 2014 VA examiner noted that the Veteran indicated that he was not sure why he was there at the examination and he wished to not pursue the examination at that time until he talked to his representative. As a result, no VA examination was conducted. Notably, the Veteran was specifically informed in a May 2014 correspondence that he was being scheduled for an examination in connection with his appeal per the instructions of the March 2014 Board remand. Neither the Veteran nor his attorney has requested that the examination be rescheduled. 

The Board notes that VA's duty to assist claimants is not always a "one-way street." In other words, a claimant seeking help cannot passively wait for it in those circumstances where he or she may or should have information that is essential in obtaining putative evidence. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Under the foregoing circumstances, the Board will not remand this matter again to arrange a new examination for the Veteran's service-connected status post lung cancer with sleep apnea disability. Rather, the Board will adjudicate the issue on appeal based upon the evidence that is currently of record.

In light of the above, the Board finds that the RO substantially complied with the March 2014 remand directives, to the extent possible, and no further action in this regard is warranted. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with).

Also of record and considered in connection with the appeal are the various written statements provided by the Veteran and by the Veteran's representative on his behalf. 

The Board additionally observes that all appropriate due process concerns have been satisfied. See 38 C.F.R. § 3.103 (2014). 

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b).

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). 


Factual Background

The Veteran underwent a VA examination in February 2010. The examiner noted that the Veteran had squamous cell carcinoma in the left lung. The Veteran underwent removal of the upper left lung in December 2009. He was not scheduled to undergo radiation or therapy at that time as he thought the doctors got all of the cancer based on what the pulmonologist told them. He was using Albuterol and Combivent for years due to a previous diagnosis of chronic obstructive pulmonary disease (COPD) and asthma. He used his Albuterol 3 to 4 times a day. He had no productive cough and no chronic cough. He had been on several courses of steroids the past year. He admitted to several acute exacerbations of his asthma requiring immediate use of his rescue inhaler. His chief complaint was shortness of breath, feeling tired, and pain in the left anterior chest wall with deep respirations post surgery. He was undergoing some physical therapy at the hospital to help with his endurance. He had a Forced Expiratory Volume in one second (FEV-1) of 52 percent predicted, Forced Vital Capacity (FEV-1/FVC) ratio of 65 and Diffusion Capacity of the Lung for Carbon Monoxide by the Single Breath Method (DLCO (SB)) ratio of 92.5 percent.

On VA examination in September 2010, the examiner opined that the Veteran had pulmonary volume loss secondary to his lobectomy which could easily worsen the underlying obstructive sleep apnea. The increased symptoms were more difficulty sleeping, apneic episodes, and fatigue.

The Veteran underwent a VA examination on November 23, 2010. The examiner noted that since the Veteran's upper lobe lobectomy and surgical recovery, there had been no recurrence of cancer. The Veteran's treatment was completed and he was on no active chemotherapy. Since the surgery, he continued to have some incision site pain and anterior left chest numbness which was postoperative. He continued to be screened 3-4 times yearly via private pulmonologist and to this date there has been no recurrence of cancer. He did take breathing medications for his COPD which was not related to his cancer. He had a history of clear productive cough, infrequent wheezing and non-anginal chest pain. Pulmonary findings revealed respirations that were symmetrical with slight scattered rhonchi. There were no rales or wheezes noted. Absent breath sounds of the left upper lung was noted. The examiner noted that the Veteran was quite limited on exertional activities due to shortness of breath from his COPD and decreased pulmonary functions from his upper left lobectomy.

A November 2010 pulmonary function test (PFT) revealed pre-bronchodilator readings of FEV-1 of 63 percent predicted and FEV-1/FVC ratio of 65 percent. Post-bronchodilator readings were FEV-1 of 59 percent predicted and FEV-1/FVC ratio of 56. The DLCO ratio was 74 percent.

A December 2012 PFT revealed pre-bronchodilator readings of FEV-1 of 50 percent predicted and FEV-1/FVC ratio of 62. Post-bronchodilator readings were FEV-1 of 86 percent predicted and FEV-1/FVC ratio of 66. The DLCO ratio was 95 percent.

A January 2014, PFT revealed pre-bronchodilator readings of FEV-1 of 48 percent predicted and FEV-1/FVC ratio of 66. Post-bronchodilator readings were FEV-1 of 50 percent predicted and FEV-1/FVC ratio of 67. 

A January 2014 follow-up treatment note reported that the Veteran had chronic asthmatic bronchitis with worsening PFT. He had severe COPD compared to mild to mild to moderate FEV1 reduction. When the Veteran was seen in December 2012, his FEV1 had dropped from 66 percent to 48 percent.

As noted above, per the March 2014 Board remand instructions, the Veteran was scheduled for a VA examination in June 2014 to assess the current severity of his service-connected status post lung cancer with sleep apnea. However, the June 2014 VA examiner noted that the Veteran indicated that he was not sure why he was there at the examination and he wished to not pursue the examination at that time until he talked to his representative. As a result, no VA examination was conducted. 

Nevertheless, PFT testings was conducted on June 13, 2014 revealing pre-bronchodilator FEV-1 readings of 61.2 percent predicted and FEV-1/FVC ratio of 63 percent. After bronchodilator, FEV-1 was 63.1 percent predicted and FEV-1/FVC ratio of 64 percent was noted.

I. Reduction

In rating reductions, when VA contemplates reducing an evaluation for a veteran's service-connected disability or disabilities, it must follow specific procedural steps prior to such discontinuance. 38 C.F.R. § 3.105(e); see O'Connell v. Nicholson, 21 Vet. App. 89, 93 (2007) (noting that "Congress enacted section 5112(b)(6) so that veterans receiving disability compensation would be notified in advance that their benefits would be diminished, thus enabling them to (1) adjust to the diminished expectation and (2) submit evidence to contest the reduction," and that § 3.105(e) "furthers Congress's intent" in this regard). As enumerated in 38 C.F.R. § 3.105(e) , "[w]here the reduction in evaluation of a service-connected disability or employability status is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons." 38 C.F.R. § 3.105(e) (emphasis added). In addition, "[t]he beneficiary will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefor, and will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level." 38 C.F.R. § 3.105(e). The beneficiary also will receive notification that "he or she will have an opportunity for a pre-determination hearing," 38 C.F.R. § 3.105(i), and thereafter, a "final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires." See 38 C.F.R. §§ 3.105(e); 3.500(r). 

In addition to satisfying the procedures outlined above, the RO must gather evidence to establish that a rating reduction is proper. Pertinent to the instant case, according to 38 C.F.R. § 3.344(c) , where a rating or ratings have been in effect for less than five years, as here, "[r]eexaminations disclosing improvement, physical or mental, in these disabilities will warrant reduction in rating." 38 C.F.R. § 3.344(c); see also Faust v. West, 13 Vet. App. 343, 351 (2000) (noting that § 3.344(c) sets forth the provisions relating to disabilities which are likely to improve, and states that "[t]he provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more)"); see also Brown v. Brown, 5 Vet. App. 413, 417 (1993) (holding that five-year period in § 3.344(c) is to be measured from effective date of rating not from date of RO decision assigning that rating). In considering the propriety of a reduction, the Board must focus on the evidence available to the RO at the time that it effectuated the reduction, although the Board may consider post-reduction medical evidence in the context of evaluating whether the condition had demonstrated actual improvement. Cf. Dofflemyer v. Derwinski, 2 Vet. App. 277, 281-82 (1992).

In an April 2010 rating decision, the RO granted service connection for status post left upper lobe lobectomy due to squamous cell carcinoma, claimed as respiratory cancer, at a 100 percent disability rating, effective February 1, 2010 under Diagnostic Code 6819.

Malignant neoplasm of the lung warrants a 100 percent rating. A rating of 100 percent will continue beyond cessation of any surgical or other therapeutic procedure. Six months after discontinuance of treatment, the appropriate disability rating shall be determined by mandatory VA examination. Any change in evaluation based upon that or subsequent examination shall be subject to the provisions of § 3.105(e). If there has been no local recurrence or metastasis, the condition will be rated on the residuals. 38 C.F.R. § 4.97, Diagnostic Code 6819.

An October 2010 rating decision granted service connection for sleep apnea and assigned a 50 percent rating effective September 7, 2010. 

A January 2011 rating decision found that there was clear and unmistakable error in the assignment of the separate 50 percent rating for sleep apnea as the October 2010 rating decision erroneously rated the sleep apnea disability together with the already service-connected status post lung cancer. The decision then reduced the rating of the Veteran's service-connected status post lung cancer with sleep apnea from 100 percent to 50 percent effective November 23, 2010.

Typically, as noted above, before VA may reduce the assigned rating for a veteran's service-connected disability, it must notify him or her of this proposed reduction, and provide him or her with at least 60 days time to present additional evidence showing that compensation should be continued at the present level. 38 C.F.R. § 3.105(e) (2014). In this case, the RO did not issue a proposed rating decision, but it did provide the Veteran notice of this reduction in a February 2011 letter. The letter specifically informed the Veteran that his compensation payment would continue unchanged. Because there was no reduction in overall compensation, the notice provisions of 38 C.F.R. § 3.105 do not apply. See Stelzel v. Mansfield, 508 F.3d 1345, 1349 (Fed. Cir. 2007) (holding that VA was not obligated to provide a veteran with sixty days' notice before making a disability ratings decision effective if the decision did not reduce the overall compensation paid to the Veteran); see also VAOPGCPREC 71-91 (Nov. 7, 1991) (where the evaluation of a specific disability is reduced, but the amount of compensation is not reduced because of a simultaneous increase in the evaluation of one or more other disabilities, section 3.105(e) does not apply). 

Significantly, the Veteran's total disability rating has not been disturbed since December 15, 1997. Therefore, under Stelzel, the predetermination procedures of 38 C.F.R. § 3.105(e) are inapplicable, as there was no actual reduction in his overall rating.

The Board must now determine whether the evidence of record supports such a reduction. For the reasons explained below, the Board concludes that the reduction is proper. 

Under 38 C.F.R. § 3.344(c), a reexamination that shows improvement in a disability warrants reduction in the disability evaluation. As contemplated by 38 C.F.R. § 3.344(c), the Veteran underwent VA examination on November 23, 2010 which showed improvement when compared to the results of the February 2010 VA examination. 

Here, the evidence shows the Veteran's cancer is inactive and that there has been no recurrence. In this regard, there was no evidence of recurrence and metastasis reported in the any of the treatment records following the December 2009 removal of the left lung. The November 2010 VA examiner specifically indicated that since the Veteran's upper lobe lobectomy and surgical recovery, there had been no recurrence of cancer and the Veteran was on no active chemotherapy. 

In essence, once cancer was no longer active, and following the cessation of treatment, the Veteran was no longer eligible to be rated under the initial diagnostic code. See Bennett v. Brown, 10 Vet. App. 178 (Vet. App. 1997). Rather, the Veteran was to be rated on residuals which as are addressed below in the Veteran's claim for an increased rating do not warrant a rating in excess of 50 percent..

Although the medical evidence reflects his physical limitations and breathing difficulties as the Veteran had some incision site pain and anterior left chest numbness which was postoperative, such does not negate that there has been no local recurrence or metastases of his lung cancer, or that the limitations were considered within the 50 percent evaluation for this disability at the time of the reduction. 

As the evidence shows that there is no evidence of active disease and no antineoplastic treatment or current chemotherapy or radiation treatment, the reduction of the schedular disability for service-connected lung disability was proper. 38 C.F.R. § 4.97, Diagnostic Code 6819.

II. Increased Rating

The Board will now address the issue of whether a rating in excess of 50 percent is warranted for service-connected lung disability for the period from November 23, 2010.

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claims or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claims, in which case, the claims are denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2014). Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2014). 

The Veteran's entire history is reviewed when making a disability determination. See 38 C.F.R. § 4.1 (2014). Where service connection has already been established, and increase in the disability rating is at issue, it is the present level of the disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). 

However, in Fenderson v. West, 12 Vet. App. 119 (1999), it was held that evidence to be considered in the appeal of an initial assignment of a disability rating was not limited to that reflecting the then current severity of the disorder. The Court also discussed the concept of the "staging" of ratings, finding that, in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. See also Hart v. Mansfield, 21 Vet. App. 505 (2008).

The evaluation of the same disability under various diagnoses, known as pyramiding, is generally to be avoided. 38 C.F.R. § 4.14 (2014). The critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the disabilities is duplicative or overlapping with the symptomatology of the other disability. See Esteban v. Brown, 6 Vet. App. 259, 261- 62 (1994).

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. §4.7 (2014).

The Veteran's service-connected lung disability is rated as 50 percent disabling for the period since November 23, 2010 under Diagnostic Codes 6819-6844. 

Although a separate rating is no longer in effect, sleep apnea is rated under Diagnostic Code 6847 for sleep apnea syndromes. 38 C.F.R. § 4.97 (2014). 

VA regulations provide that, when rating coexisting respiratory conditions, a single rating will be assigned under the Diagnostic Code which reflects the predominant disability. While the Veteran's sleep apnea had been initially rated separately under Diagnostic Code 6847, the assignment of that separate rating was in error and the disability has since been rated with status post lung cancer in accordance with VA regulations. Ratings pursuant to Diagnostic Codes 6819, 6844, and 6847, where there is lung involvement of the malignancy, will not be combined with each other. 38 C.F.R. § 4.96 (2014).

As noted above, the regulation governing pulmonary/respiratory impairment resulting from lung cancer provides that when there has been no recurrence or metastasis of the cancer, the remaining disability shall be rated on the residuals. 38 C.F.R. § 4.97 Diagnostic Code 6819. Diagnostic Code 6844 provides that post-surgical residuals of lobectomy will be rated under the general rating formula for restrictive lung diseases. 

The General Formula provides for ratings from 10 to 100 percent based primarily on the results of pulmonary function tests (PFTs), specifically, Forced Expiratory Volume in one second (FEV-1), Forced Vital Capacity (FVC), and Diffusion Capacity of the Lung for Carbon Monoxide by the Single Breath Method (DLCO (SB)). 

A 10 percent rating will be assigned where there is FEV-1 of 71- to 80-percent predicted, or FEV-1/FVC of 71 to 80 percent, or DLCO (SB) of 66- to 80-percent predicted. 

A 30 percent rating is assigned for FEV-1 measured at 56 to 70 percent of predicted value; or FEV-1/FVC of 56 to 70 percent of predicted value; or, DLCO (SB) measured at 56-65 percent of predicted value. Id. 

A 60 percent rating is assigned for FEV-1 measured at 40-55 percent of predicted value, or FEV-1/FVC of 40-55 percent; or, DLCO (SB) measured at 40-55 percent of predicted value; or maximum exercise capacity at 15- 20 ml/kg/min oxygen consumption with cardiorespiratory limitation. Id.

The maximum 100 percent rating is assigned for FVC measured at less than 40 percent of that predicted; or DLCO (SB) measured at less than 40 percent predicted; or maximum exercise capacity is less than 15 ml/kg/min oxygen consumption with cardiorespiratory limitation; or cor pulmonale or pulmonary hypertension; or requires outpatient oxygen therapy. Id. 

Notes to the General Rating Formula for Restrictive Lung Disease provide further rating guidance. Note (1) provides that a 100-percent rating shall be assigned for pleurisy with empyema, with or without pleurocutaneous fistula, until resolved. Note (2) provides that, following episodes of total spontaneous pneumothorax, a rating of 100 percent shall be assigned as of the date of hospital admission and shall continue for three months from the first day of the month after hospital discharge. Note (3) provides that gunshot wounds of the pleural cavity with bullet or missile retained in lung, pain or discomfort on exertion, or with scattered rales or some limitation of excursion of diaphragm or of lower chest expansion shall be rated at least 20-percent disabling. 

Post-bronchodilator studies are required when pulmonary function tests are conducted for disability evaluation purposes except when the results of pre-bronchodilator pulmonary function tests are normal are the examiner provides a reason post-bronchodilator results should not be done. 38 C.F.R. § 4.96(d) (4) (2014). When evaluating based on pulmonary function test results, post-bronchodilator results are to be used in applying the evaluation criteria unless the post- bronchodilator results were poorer than the pre-bronchodilator results. In those cases, pre-bronchodilator results are to be used for evaluation purposes. See 38 C.F.R. § 4.96(d) (5).

Analysis

Based on the recorded PFTs since November 23, 2010, the Board finds the criteria for a rating in excess of 50 percent for the Veteran's service-connected status post lung cancer with sleep apnea are not met at any time prior to January 28, 2014. 
As noted above, under the General Formula, a 60 percent rating is warranted when FEV-1 is measured at 40-55 percent of predicted value, or FEV-1/FVC of 40-55 percent; or, DLCO (SB) is measured at 40-55 percent of predicted value; or maximum exercise capacity at 15- 20 ml/kg/min oxygen consumption with cardiorespiratory limitation. With respect to FEV-1 readings, at no time prior to January 28, 2014, have post bronchodilator PFTs demonstrated FEV-1 measurements between less than 55 percent as contemplated by a higher rating. Notably, while a December 2012 PFT revealed pre-bronchodilator readings of FEV-1 of 50 percent predicted, post-bronchodilator readings of FEV-1 were 86 percent predicted. As the record does not show post-bronchodilator readings of FEV-1 of 55 percent or less prior to January 28, 2014, the Board concludes that a rating in excess of 50 percent is not met during this period. 

However, private pulmonary test findings dated January 28, 2014 from the Howard County Medical Center revealed pre-bronchodilator FEV-1 readings of 48 percent predicted with post-bronchodilator FEV-1 readings of 50 percent predicted. These findings are consistent with a 60 percent rating which contemplated FEV-1 readings of 40 to 50 percent predicted. However, the improved readings recorded on June 13, 2014, are consistent with a 30 percent disability rating. 

In light of the foregoing, the Board concludes that the criteria for a staged 60 percent rating based on FEV-1 findings is warranted from January 28, 2014 (the date post-bronchodilator readings of 50 percent predicted are shown) to June 13, 2014 (the date that improved post-bronchodilator findings of 63.1 are shown). 

With respect to FEV-1/FVC, the record does not show findings of 55 percent or less as contemplated by a 60 percent or greater rating at any time after November 23, 2010. Likewise, the record does not show DLCO (SB) ratio of 55 percent or less at any time after November 23, 2010. On the contrary, DLCO (SB) ratios of 74 percent in November 2010, 95 percent in December 2012, and 91.6 percent in June 2014 are recorded. 

In light of the foregoing, the Board finds that a 60 percent disability evaluation is warranted for the Veteran's service-connected status post lung cancer with sleep apnea for the period from January 28, 2014, to June 13, 2014. A rating in excess of 50 percent is not warranted prior to January 28, 2014, or after June 13, 2014. 

Similarly, while the Veteran is quite limited on exertional activities due to shortness of breath, there is no evidence of PFTs which demonstrate FVC measured at less than 40 percent of that predicted; or DLCO (SB) measured at less than 40 percent predicted; or maximum exercise capacity is less than 15 ml/kg/min oxygen consumption with cardiorespiratory limitation; or cor pulmonale or pulmonary hypertension; or requires outpatient oxygen therapy as contemplated by a 100 percent disability rating. Likewise, the evidence does not show that the Veteran's residual of lung cancer with sleep apnea results in chronic respiratory failure with carbon dioxide retention or cor pulmonale, or tracheostomy as contemplated by a 100 percent disability rating for sleep apnea under Diagnostic Code 6847. 

The Board has considered the question of whether an extraschedular rating may be appropriate for the Veteran's service-connected status post lung cancer with sleep apnea disability. See Bagwell v. Brown, 9 Vet. App. 157 (1966). Ordinarily, the VA Rating Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulation, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent period of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.21(b) (1) (2014). 

Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the level of disability and symptomatology and is found to be inadequate, the Board must then determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. 

The Veteran has not identified any factors which may be considered to be exceptional or unusual, and the Board has been similarly unsuccessful. There is no evidence in the medical records of an exceptional or unusual clinical picture. Further, the record does not demonstrate any other reason why an extraschedular rating should be assigned. Accordingly, the Board therefore has determined that referral of the case for extraschedular consideration pursuant to 38 C.F.R. § 3.321(b) (1) is not warranted.


ORDER

The reduction of a rating from 100 percent for status post lung cancer with sleep apnea was proper and to that extent the appeal is denied.

Entitlement to a rating in excess of 50 percent for status post lung cancer with sleep apnea prior to January 28, 2014, is denied. 

Entitlement to a 60 percent for status post lung cancer with sleep apnea for the period from January 28, 2014, to June 13, 2014 is granted, subject to the laws and regulations governing the payment of monetary benefits.

Entitlement to a rating in excess of 50 percent for status post lung cancer with sleep apnea from June 13, 2014, is denied. 



____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs