Citation Nr: 1719220 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 10-05 320 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUE

Entitlement to a disability rating in excess of 60 percent for prostate cancer residuals. 


REPRESENTATION

Appellant represented by: California Department of Veterans Affairs


ATTORNEY FOR THE BOARD

S. Owen, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1965 to January 1969.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California, which assigned a rating of 10 percent following treatment for adenocarcinoma of the prostate. The Veteran filed a timely notice of disagreement in October 2009.

In a subsequent July 2010 rating decision, the RO awarded the Veteran a rating of 60 percent for his service-connected post-treatment prostate adenocarcinoma. Although the RO granted a higher disability rating, the claim remains in controversy because the Veteran is not in receipt of the maximum benefit allowable. See A.B. v. Brown, 6 Vet. App. 35 (1993).

The Veteran requested a hearing before a member of the Board in his February 2010 VA Form 9. A hearing was scheduled in May 2012. However, prior to the hearing, the Veteran withdrew his hearing request. Accordingly, the Board considers the Veteran's request for a hearing to be withdrawn. See 38 C.F.R. § 20.70 (e) (2016) (providing that a request for a hearing may be withdrawn by an appellant at any time before the date of the hearing).

In September 2012, March 2016, and November 2016, the Board remanded the case for further development of the record, including obtaining outstanding records and a VA examination and medical opinion. There has been substantial compliance with the requested development. Stegall v. West, 11 Vet. App. 268 (1998); see Dyment v. West, 13 Vet. App. 141 (1999).

The Board notes that the issue of the propriety of the reduction of the Veteran's disability rating for prostate cancer from 100 percent to 60 percent, effective December 1, 2009, has not been certified to the Board. As such, the Board will not accept jurisdiction over it at this time. Generally, the propriety of a rating reduction is a separate issue from a claim for an increased evaluation. See Dofflemeyer v. Derwinski, 2 Vet. App. 277, 279-80 (1992); see also Peyton v. Derwinski, 1 Vet. App. 282, 286 (1991). 

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this case should take into consideration the existence of this electronic record.


FINDING OF FACT

The Veteran's prostate cancer residuals include voiding dysfunction; renal dysfunction is not related to his service-connected disability. 


CONCLUSION OF LAW

The criteria for a rating in excess of 60 percent for prostate cancer residuals have not been met. 38 U.S.C.A. §§ 1155 , 5107(b) (West 2014); 38 C.F.R. §§ 4.7 , 4.10, 4.21, 4.115a, 4.115b, Diagnostic Code 7528 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5103, 5013A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

The Veteran was advised of VA's duties to notify and assist in the development of the claim at issue by notice letters dated in April 2009 and October 2009. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

The VCAA also provides that VA has a duty to assist claimants in obtaining evidence needed to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R § 3.159(c). Here, the Veteran's service records, VA records, and private treatment records identified by the Veteran have been obtained and associated with the claims file. The Veteran was afforded VA examinations September 2014, April 2016, and December 2016 with a medical opinion rendered in March 2017. The examinations are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The VA examination reports reflect that relevant records were reviewed and the examiner personally interviewed and examined the Veteran, including eliciting a history from him, and offered opinions. 

The Veteran has been afforded a meaningful opportunity to participate effectively in the processing of the claim, including by submission of statements and arguments. Based upon the foregoing, the duties to notify and assist the Veteran have been met, and no further action is necessary to assist the Veteran in substantiating this claim.

Analysis

The Veteran contends that a higher rating is warranted for his prostate cancer residuals. Specifically, he argues that his prostate cancer should be rated based upon renal dysfunction instead of a voiding dysfunction, to include urine leakage. He is currently rated at 60 percent for prostate cancer residuals under Diagnostic Code 7528, voiding dysfunction, to include urine leakage. 

In general, the assignment of a particular diagnostic code is dependent on the facts of the case. See Butts v. Brown, 5 Vet. App. 532, 538 (1993). In reviewing a claim for a higher rating, VA must consider which diagnostic code or codes are most appropriate for application in the claimant's case and provide an explanation for the conclusion. See Tedeschi v. Brown, 7 Vet. App. 411, 414 (1995). 

38 C.F.R. § 4.115b, Diagnostic Code 7528 provides that the residuals of prostate cancer are rated as voiding dysfunction or renal dysfunction, whichever is predominant. See also 38 C.F.R. § 4.115a. 

Private treatment records reflected that the Veteran had BUN between 40 and 80 in 2013 and 2014. 

A September 2014 examination report reflects that the Veteran is diagnosed with chronic kidney disease. The examiner noted that the Veteran reported having an elevated BUN and creatinine in 1997, as well as elevated PSA in 1999, from which he was subsequently diagnosed with prostate cancer via biopsy and underwent radiation therapy for eight weeks. The examiner stated that he had reviewed the Veteran's claims file and noted that the Veteran's prostate cancer was actually diagnosed in 2007. However, even though the examiner noted that the VA treatment records reflected that the Veteran was first diagnosed with prostate cancer in 2007, the examiner opined that the records indicated that the Veteran's renal dysfunction did not manifest until 2010, more than 10 years after the prostate cancer diagnosis. The Board found the examiner's opinion inadequate, as it was based on an incorrect premise. 

An April 2016 addendum opinion reflects that the Veteran completed radiation in 2008. The examiner opined that the Veteran's medical records reflected that the Veteran had chronic kidney disease, but that the underlying cause of kidney [dys]function as prostate cancer and its treatment could not be made at that time. 

The Veteran was afforded a VA examination in December 2016. The examiner noted that the Veteran had a voiding dysfunction which required the use of absorbent material which must be changed two to four times per day. The Veteran's voiding dysfunction caused increased urinary frequency to that of a daytime voiding interval of less than one hour, with nighttime wakening to void five or more times. The voiding dysfunction caused signs or symptoms of obstructed voiding, as reflected by marked hesitancy, markedly slow stream, markedly weak stream, and markedly decreased force of stream. 

In March 2017, a medical opinion was rendered regarding the residuals of the Veteran's prostate cancer. The examiner opined that the Veteran's claimed chronic kidney disease, to include as renal dysfunction, was less likely than not related to or aggravated by his prostate cancer. The examiner noted that current oncologic, nephrology and internal medical literature lacks sufficient, objective oncologically-based, clinical evidence to support a nexus between chronic kidney disease, to include renal dysfunction, and prostate cancer with or without radiation therapy, because of the independent and separate pathophysiologic and etiologic nature of the diseases. Specifically, prostate cancer is an adenocarcinoma within the prostate gland, with etiology of the disease including age, endocrine changes in androgen sources from testes and adrenal glands to paracrine/autocrine/intracine, diet, obesity, and genetics that result in an increase multiplicity of adenoma proliferation and architectural pattern of prostate cancer cells. In comparison, chronic kidney disease involves an abnormal mechanical renal dysfunction and progressive decline in the glomerular filtration rate (GFR), to include a decrease in GFR, increase in excretion of albumin and proteins, as well as toxin and electrolytes. The examiner continued that, moreover, classic radiation of the prostate involves the use of x-ray therapy, which uses high levels of radiation to kill prostate cancer cells while minimizing damage to healthy cells, and its treatment is directed at the prostate gland deep within the retrotubic space of the male pelvic cavity, beneath the bladder and thus anatomically, deep, central and distal to the more proximal, right and/or left kidneys and ureters. Therefore, the Veteran's current claimed chronic kidney disease was less likely than not related to, aggravated by, or had a nexus to the Veteran's prostate cancer with or without radiation therapy and it was less likely than not that the Veteran has renal dysfunction that is related to his prostate cancer. 

The examiner noted that the Veteran has a history of uncontrolled hypertension, smoking, substance abuse, renal dysfunction, diverticulitis with sigmoid colectomy, end colostomy followed by take-down re-anastomosis, gout, and PTSD. Genitourinalogically, the December 2016 examination indicated a post-treatment PSA of 0.16 (2016) with erectile dysfunction (ED), voiding dysfunction (urinary incontinence, hesitancy, slow stream, weak stream and decrease force of stream), and decreased sexual drive. Therefore, it was at least as likely as not that the Veteran's prostate cancer was in clinical remission. However, the examiner opined that current nephrology and/or internal medicine literature lacks any sufficient, medically-based, clinical etiologic evidence to support a nexus between chronic kidney disease and ED or voiding dysfunction or diminished sex drive. Therefore, the chronic kidney disease, which relates to pathophysiologic and mechanical changes in the renal tubular and glomerular filtration functions, was less likely than not etiologically related to voiding dysfunction and/or diminished sex drive. Alternatively, current internal medicine and nephrology literature agree that uncontrolled hypertension is a leading risk factor for chronic kidney disease. Specifically, hypertension is directly related to the function of the cardiovascular system (heart) and renal renin-angiotensin cascade (kidney function). Therefore, it was at least as likely as not that the etiology and pathophysiology of the Veteran's chronic kidney disease was related to and/or aggravated by an elevation of blood pressure.

The Board finds the March 2017 examiner's opinion persuasive as the opinion is informed by a thorough review of the Veteran's claim file, medical history of prostate cancer and urinary complaints, and relevant medical literature. The examiner's opinion reflects clear and unequivocal conclusions regarding the relationships between the Veteran's prostate cancer, his voiding dysfunction, his renal dysfunction, and his uncontrolled hypertension. The reasoning adequately shows that the examiner's opinions are supported by the relevant and material evidence and a review of the medical literature. Thus, the examiner's opinion is based upon sound reasoning and the Board gives it greater probative value in the matter of whether the Veteran's residuals of prostate cancer should be rated as renal dysfunction or voiding dysfunction.

The Board acknowledges that a claimant is generally competent to introduce lay testimony of observable symptoms of disability and continuity of such symptoms. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). However, as a lay person, the Veteran is not competent to provide a medical diagnosis regarding the underlying cause of his prostate residuals, to include renal dysfunction; such a matter requires medical expertise and laboratory testing. See id. at 1377 (noting general competence to testify as to symptoms but not to provide medical diagnosis). Thus, the Board accords significantly greater probative value to the medical evidence of record than to the lay assertions regarding the underlying cause of the Veteran's prostate residuals.

Based upon the medical evidence of record, the March 2017 VA examination report and opinion, and the Veteran's lay assertions, the Board finds that a rating based upon renal dysfunction is not appropriate in this instance, and the Veteran's renal dysfunction is not his most predominant residual. 

Looking to the rating assigned based on voiding dysfunction, voiding dysfunction is rated under three subcategories: urinary leakage, urinary frequency and obstructed voiding. 

Urinary leakage has ratings ranging from 20 to 60 percent. A 60 percent rating contemplates continual urine leakage, post-surgical urinary diversion, urinary incontinence, or stress incontinence requiring the use of an appliance or the wearing of absorbent materials which must be changed more than four times per day. 

Urinary frequency has ratings ranging from 10 to 40 percent. A 40 percent rating contemplates daytime voiding interval less than one hour, or; awakening to void five or more times per night.

Obstructed voiding has ratings ranging from noncompensable to 30 percent. A 30 percent rating contemplates urinary retention requiring intermittent or continuous catheterization. 

The Board notes that under a voiding dysfunction rating, the Veteran is currently receiving a 60 percent rating, the highest rating available. The evidence of record reflects that the Veteran has a voiding dysfunction that causes urine leakage, which requires him to wear an absorbent material that must be changed two to four times per day. He has a daytime voiding interval of less than one hour, with nighttime wakening to void five or more times. He has obstructed voiding, as reflected by marked hesitancy, markedly slow stream, markedly weak stream, and markedly decreased force of stream. 

The Board finds that the Veteran is currently receiving the highest rating available under a voiding dysfunction and that a rating under renal dysfunction is not warranted. Therefore, the Veteran's claim for the assignment of a higher rating his prostate cancer residuals must be denied. 

In this case, the Veteran has not asserted, and the evidence does not show that the Veteran's disability has caused unemployability. Because there is no evidence of unemployability, further consideration of entitlement to TDIU is not required. Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). 

ORDER

Assignment of a higher rating, to include a rating under renal dysfunction, for prostate cancer residuals is denied. 



____________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs