﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 190806-25316
DATE: May 29, 2020

ORDER

Entitlement to a restoration of a 30 percent rating evaluation for posttraumatic headache disorder, is granted; however, entitlement to an increased rating in excess of 30 percent is denied.

Entitlement to a restoration of a 10 percent rating evaluation for traumatic brain injury (TBI), is granted; however, entitlement to an increased rating in excess of 10 percent is denied.

Entitlement to a 10 percent disability rating for multiple noncompensable service-connected disabilities pursuant to 38 C.F.R. § 3.324, is denied.

FINDINGS OF FACT

1. The Veteran’s 30 percent rating for posttraumatic headache disorder was in effect for more than 5 years at the time of the rating reduction, and the evidence does not establish sustained improvement under the normal circumstances of life and work.

2. The Veteran’s 10 percent rating for TBI was in effect for more than 5 years at the time of the rating reduction, and the evidence does not establish sustained improvement under the normal circumstances of life and work.

3. Throughout the appeal period, the Veteran’s posttraumatic headache disorder has been manifested by migraines characteristic of prostrating attacks occurring on an average once a month over the last several months.

4. Throughout the appeal period, the Veteran’s TBI has been manifested by facets of cognitive impairment and other residuals of TBI, of no more than mild severity; TBI residuals warranting a score of “2” or more to show impairment in one or more facets have not been shown.

5. For the applicable appeal period, the Veteran is in receipt of a compensable disability rating.

CONCLUSIONS OF LAW

1. The reduction in rating for posttraumatic headache disorder, effective October 1, 2019, was improper and restoration to the prior rating is warranted. 38 U.S.C. §§ 1155, 5107, 5112; 38 C.F.R. §§ 3.105, 3.344, 3.655, 4.71a Diagnostic Code 8100.

2. The reduction in rating for TBI, effective October 1, 2019, was improper and restoration to the prior rating is warranted. 38 U.S.C. §§ 1155, 5107, 5112; 38 C.F.R. §§ 3.105, 3.344, 3.655, 4.71a Diagnostic Code 8045.

3. The criteria for an increased rating in excess of 30 percent for posttraumatic headache disorder have not been met. 38 U.S.C. §§ 1155, 5103(a), 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.87, Diagnostic Code 8100.

4. The criteria for an increased rating in excess of 10 percent for TBI have not been met. 38 U.S.C. §§ 1155, 5103(a), 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.87, Diagnostic Code 8045.

5. For the applicable appeal period, the criteria for entitlement to a 10 percent disability evaluation for multiple noncompensable service-connected disabilities have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 3.324.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served in the U.S. Army on active duty from May 1977 to May 1980. In a July 2019 rating decision, the Regional Office (RO) denied the Veteran’s claims, and in August 2019 the Veteran filed a VA Form 10182 requesting an appeal by way of evidence submission. Accordingly, the Board will consider the evidence of record submitted within 90 days of the election of the Evidence Submission lane. 

Rating Reductions

In rating reductions, when VA contemplates reducing an evaluation for a veteran’s service-connected disability or disabilities, it must follow specific procedural steps prior to such discontinuance. 38 C.F.R. § 3.105(e). As enumerated in 38 C.F.R. § 3.105(e), “[w]here the reduction in evaluation of a service-connected disability or employability status is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons.” Id. In addition, “[t]he beneficiary will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefore and will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level.” Id. The beneficiary also will receive notification that “he or she will have an opportunity for a pre-determination hearing,” 38 C.F.R. § 3.105(i), and thereafter, a “final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires.” See 38 C.F.R. §§ 3.105(e); 3.500(r). In addition to satisfying the procedures outlined above, the RO must gather evidence to establish that a rating reduction is proper.

Pertinent to the instant case, according to 38 C.F.R. § 3.344(a), titled “[e]xamination reports indicating improvement,” applies to disability ratings which have continued at the same level for 5 years or more, which is applicable in this case. See 38 C.F.R. § 3.344(c). 38 C.F.R. § 3.344(a) states that “[e]xaminations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction” and “though material improvement in the physical or mental condition is clearly reflected the rating agency will consider whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life.”

Herein, and as discussed in greater detail below the Veteran’s 30 percent rating for posttraumatic headache disorder was in effect since December 3, 2004 and the Veteran’s 10 percent rating for traumatic brain injury was in effect since September 29, 2010.

A rating cannot be reduced unless improvement is shown to have occurred. 38 U.S.C. § 1155. For ratings that have been in effect for five years or more, reduction is warranted only when reexamination discloses sustained and material improvement that will be maintained under the ordinary conditions of life. 38 C.F.R. § 3.344(a)-(b). Examinations thus usually are the comparison point for determining whether there has been improvement. Those examinations forming the basis for a reduction must be adequate, certainly as comprehensive as the examination on which the existing rating was based. 

Furthermore, VA must find the following: (1) based on a review of the entire record, the examination forming the basis for the reduction is full and complete, and at least as full and complete as the examination upon which the rating was originally based; (2) the record clearly reflects a finding of material improvement; and (3) it is reasonably certain that the material improvement found will be maintained under the ordinary conditions of life. 38 C.F.R. § 3.344(a)-(b). Additionally, in cases in effect for longer than five years, “[r]atings on account of diseases subject to temporary and episodic improvement... will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated.” Id. 

In considering the propriety of a reduction, the Board must focus on the evidence available to the RO at the time that it effectuated the reduction, although the Board may consider post-reduction medical evidence in the context of evaluating whether the condition had demonstrated actual improvement. Dofflemyer v. Derwinski, 2 Vet. App. 277, 281-82 (1992). Where the reduction in evaluation of a service-connected disability is considered warranted, and the lower evaluation would result in a net reduction of compensation payments currently being made, a rating proposing the reduction will be prepared setting forth all material facts and reasons.

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21.

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the veteran’s disability. 38 C.F.R. § 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

Where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibits symptoms that would warrant different evaluations during the course of the appeal, the assignment of staged ratings is appropriate. See Fenderson v. West, 12 Vet. App. 119 (1999). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

1. Rating Reduction for Posttraumatic Headache Disorder.

The Veteran contends that the rating reduction for his headache disorder was not proper and his condition did not improve. The Veteran’s posttraumatic headache disorder evaluation for 30 percent was in effect from December 3, 2004. A July 2019 rating reduced the Veteran’s rating to noncompensable, effective October 1, 2019. Measuring from the effective date of the rating, December 3, 2004, the Veteran’s 30 percent rating was in effect for more than 5 years at the time of the proposed reduction. 

As an initial matter, the RO complied with the procedural safeguards regarding the manner in which the Veteran was given notice of and the implementation of the reduction in March 2018 written correspondence. See 38 C.F.R. § 3.105.

The Veteran’s posttraumatic headache disorder is rated under Diagnostic Code 8100 and was reduced from 30 percent to a noncompensable rating, effective October 1, 2019. The rating criteria under Diagnostic Code 8100 are successive, meaning that to satisfy the criteria for a higher level, a claimant must satisfy all the requirements of the lower levels, and 38 C.F.R. §§ 4.7 and 4.21 do not apply to circumvent these requirements. Johnson v. Wilkie, 30 Vet. App. 245 (2018). 

Under Diagnostic Code 8100, a noncompensable rating is warranted for migraines characteristic of less frequent attacks; a 10 percent rating is warranted for migraines with characteristic prostrating attacks averaging one in two months over last several months; a 30 percent rating is warranted for migraines with characteristic prostrating attacks occurring on an average once a month over the last several months; and a maximum 50 percent rating is warranted for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a, Diagnostic Code 8100.

The Board observes that the rating criteria do not define “prostrating,” nor has the United States Court of Appeals for Veterans Claims (Court). Cf. Fenderson v. West, 12 Vet. App. 119 (1999). By way of reference, the Board notes that, according to WEBSTER’S NEW WORLD DICTIONARY OF AMERICAN ENGLISH, THIRD COLLEGE EDITION (1986), p.1080, “prostration” is defined as “utter physical exhaustion or helplessness.” A very similar definition is found in DORLAND’S ILLUSTRATED MEDICAL DICTIONARY 1367 (28th Ed. 1994), in which “prostration” is defined as “extreme exhaustion or powerlessness.” 

The Veteran’s 30 percent rating for posttraumatic headache disorder was initially rated based on a January 2005 VA neurological examination. In that examination report, the VA examiner noted the Veteran had intense throbbing pain located in the back of his head with photophobia, blurred vision, and dizziness. No nausea or vomiting was reported to be associated with the headaches. The examiner also noted the Veteran had headaches 2 to 3 times a week, lasting anywhere from several hours to one day. The Veteran reported he alleviated his symptoms with over the counter medication. 

In April 2010, the Veteran had a VA TBI examination in which he reported experiencing headaches 3 to 4 times a week, with pain intensity being a 6 out of 10. The Veteran’s headaches were characterized as non-prostrating, lasting 8 to 24 hours and accompanied by dizziness. 

In a November 2015 VA examination for headaches, the Veteran reported symptoms of pulsating or throbbing head pain, localized to one side of his head with changes in vision. He reported the headaches lasted less than a day with no prostrating attacks. The VA examiner commented that the Veteran’s description of his headaches had not changed significantly since his 2010 VA TBI examination.

A March 2018 rating decision proposing reduction of the Veteran’s headache rating based the decision on a March 2018 VA headache examination, which noted the Veteran had not had prostrating attacks from headaches in the past 12 months. The Veteran reported to the March 2018 VA examiner that he had headaches 2 to 3 times a week and takes over the counter medication to resolve his symptoms. He reported the medication did not “help much for headaches.” His headache symptoms were described as pulsating or throbbing headache pain, with sensitivity to light, and lasting less than a day. He also reported the headache pain was located mostly in the back of his head. The examiner noted the Veteran’s headaches were not characteristic of prostrating attacks of pain. However, the VA examiner noted the impact of the Veteran’s headaches may limit his time at work.

In March 2018 the Veteran also had a VA examination to assess his TBI and during that examination he reported he still experienced migraines.

In the March 2018 rating decision, the Regional Office (RO) acknowledges prostrating attacks as “a headache that causes you to remove yourself from your situation or setting, and/or stop you from doing your activities.” 

The Board finds the RO failed to fully consider the entirety of the evidence of record, and the entire recorded history of the Veteran’s headache disorder, at the time of the reduction. 

Although the March 2018 VA examiner found the Veteran’s headaches are not prostrating, the examiner noted the Veteran’s characterization of his headache symptoms has not changed significantly since his reported symptomatology in the 2010 TBI examination. The 2005 VA examination for which the 30 percent evaluation was awarded, shows the Veteran reported having headaches 2 to 3 times a week with photophobia, lasting anywhere from several hours up to one day. He also reported he used over the counter medicine to relieve his symptoms. The examination did not use the word “prostrating” to describe the Veteran’s symptoms. However, it is clear at the time the RO felt the description of the Veteran’s symptoms reflected a rating evaluation which involves prostrating attacks. 

Subsequent VA examinations reveal no improvements in the Veteran’s symptomatology as symptoms continued to reflect, he had pulsating or throbbing headaches at least 2-3 times a week, lasting at the most, one day, with use of over the counter medication to alleviate symptoms. This includes the most recent March 2018 VA examination for which the reduction was based. Additionally, the March 2018 VA examiner noted the Veteran’s symptoms limit his ability to work. In the March 2018 rating decision, the RO characterized prostrating attacks as “a headache that causes you to remove yourself from your situation or setting, and/or stop you from doing your activities.” Headaches that may limit the Veteran’s time at work certainly justify the RO’s 30 percent rating.

The Board finds the evidence of record does not reflect an improvement in the Veteran’s ability to function under the ordinary conditions of life and work. Even if there may have been periods of temporary and episodic improvement in the Veteran’s symptoms, there was no evidence of sustained improvement during the lengthy appeal period. This conclusion is supported by the medical and lay evidence of record. The VA examinations of record, since the award of a 30 percent rating, note a consistency in symptom reporting such as prostrating or throbbing headache pain, localized to one area of the head 2 to 3 times a week and lasting no more than one day. Additionally, the VA examination of record at the time of the proposed reduction notes the Veteran’s ability to work is limited as a result of his headache disorder symptoms. There is no evidence that the Veteran’s posttraumatic headache disorder has improved as there is no improvement in the Veteran’s ability to function under the ordinary conditions of life and work, especially if the headaches may limit his ability to work.

Accordingly, the Board finds that the weight of the evidence does not establish sustained improvement in the Veteran’s posttraumatic headache disorder. The Veteran continued to report ongoing headache pain 2 to 3 times a week, localized to one area of the head, with photophobia. He has consistently reported he continues to use over the counter medication in an effort to relieve his headache pain. As such the reduction of the Veteran’s rating for posttraumatic headache disorder was not supported by the evidence of record at the time of the proposed reduction.

Resolving all doubt in favor of the Veteran, the 30 percent rating for posttraumatic headache disorder is restored effective December 3, 2004. 

2. Rating Reduction for Traumatic Brain Injury (TBI).

The Veteran contends that the rating reduction for TBI was not proper and his condition did not improve. The Veteran’s TBI evaluation for 10 percent was in effect from September 29, 2010. A July 2019 rating reduced the Veteran’s rating to noncompensable, effective October 1, 2019. Measuring from the effective date of the rating, September 29, 2010, the Veteran’s 10 percent rating was in effect for more than 5 years at the time of the proposed reduction.

As an initial matter, the RO complied with the procedural safeguards regarding the manner in which the Veteran was given notice of and the implementation of the reduction in March 2018 written correspondence. See 38 C.F.R. § 3.105.

TBI is rated under 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8045. Under this Diagnostic Code, there are three main areas of dysfunction listed that may result from TBI and have profound effects on functioning: cognitive, emotional/behavioral, and physical. Each of these areas of dysfunction may require evaluation.

Cognitive impairment is defined as decreased memory, concentration, attention, and executive functions of the brain. Executive functions are goal setting, speed of information processing, planning, organizing, prioritizing, self-monitoring, problem solving, judgment, decision making, spontaneity, and flexibility in changing actions when they are not productive. Not all of these brain functions may be affected in a given individual with cognitive impairment, and some functions may be affected more severely than others. In a given individual, symptoms may fluctuate in severity from day to day. Cognitive impairment is rated under the table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified.” Id.

Subjective symptoms may be the only residual of TBI or may be associated with cognitive impairment or other areas of dysfunction. The rater is instructed to evaluate subjective symptoms that are residuals of TBI, whether or not they are part of cognitive impairment, under the subjective symptoms facet in the table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified.” However, the rater is to separately evaluate any residual with a distinct diagnosis that may be evaluated under another diagnostic code, such as migraine headache or Meniere’s disease, even if that diagnosis is based on subjective symptoms, rather than under the “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified” table. Id.

Further, the rater is to evaluate emotional/behavioral dysfunction under § 4.130 (Schedule of ratings--mental disorders) when there is a diagnosis of a mental disorder. When there is no diagnosis of a mental disorder, emotional/behavioral symptoms should be evaluated under the criteria in the table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified.” Id.

Physical (including neurological) dysfunction is to be evaluated based on the following list, under an appropriate diagnostic code: Motor and sensory dysfunction, including pain, of the extremities and face; visual impairment; hearing loss and tinnitus; loss of sense of smell and taste; seizures; gait, coordination, and balance problems; speech and other communication difficulties, including aphasia and related disorders, and dysarthria; neurogenic bladder; neurogenic bowel; cranial nerve dysfunctions; autonomic nerve dysfunctions; and endocrine dysfunctions. Id.

The table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified” contains 10 important facets of TBI related to cognitive impairment and subjective symptoms. It provides criteria for levels of impairment for each facet, as appropriate, ranging from 0 to 3, and a 4th level, the highest level of impairment, and labeled “total.” However, not every facet has every level of severity. The Consciousness facet, for example, does not provide for an impairment level other than “total,” since any level of impaired consciousness would be totally disabling. A 100-percent evaluation will be assigned if “total” is the level of evaluation for one or more facets. If no facet is evaluated as “total,” assign the overall percentage evaluation based on the level of the highest facet as follows: 0 = 0 percent; 1 = 10 percent; 2 = 40 percent; and 3 = 70 percent. For example, assign a 70 percent evaluation if 3 is the highest level of evaluation for any facet. Id.

Note (1): There may be an overlap of manifestations of conditions evaluated under the table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified” with manifestations of a comorbid mental or neurologic or other physical disorder that can be separately evaluated under another diagnostic code. In such cases, do not assign more than one evaluation based on the same manifestations. If the manifestations of two or more conditions cannot be clearly separated, assign a single evaluation under whichever set of diagnostic criteria allows the better assessment of overall impaired functioning due to both conditions. However, if the manifestations are clearly separable, assign a separate evaluation for each condition. Id. 

Note (2): Symptoms listed as examples at certain evaluation levels in the table are only examples and are not symptoms that must be present in order to assign a particular evaluation. Id. 

Note (3): “Instrumental activities of daily living” refers to activities other than self-care that are needed for independent living, such as meal preparation, doing housework and other chores, shopping, traveling, doing laundry, being responsible for one's own medications, and using a telephone. These activities are distinguished from “Activities of daily living,” which refers to basic self-care and includes bathing or showering, dressing, eating, getting in or out of bed or a chair, and using the toilet. Id.

Note (4): The terms “mild,” “moderate” and “severe” TBI, which may appear in medical records, refer to a classification of TBI made at, or close to, the time of injury rather than to the current level of functioning. This classification does not affect the rating assigned under Diagnostic Code 8045. Id.

The Veteran’s 10 percent rating for TBI was initially rated based on an April 2010 VA TBI examination. The examiner noted mild memory impairment with hypersensitivity to light and sound, accompanied by headaches. His headaches were noted as occurring 3 to 4 times a week with a pain intensity of 6 out of 10. He also reported he had difficulty falling and staying asleep most nights. The VA examiner characterized the Veteran’s memory and judgment as mildly impaired, his social interactions as routinely appropriate, and noted he was always oriented to person, time, place and situation. His motor activity was normal, and his visual spatial orientation were found to be mildly impaired. His communication was characterized as comprehension or expression, or both, of either spoken or written language is only occasionally impaired and his able to communicate complex ideas. His consciousness was recorded as normal. The examiner noted the Veteran had three or more subjective symptoms that mildly interfered with employment.

The Veteran had a VA mental health examination in April 2010 where he reported that after his initial injury, he noticed he stutters when he becomes anxious or upset. He also reported feeling impulsive and irritable, as well as being verbally aggressive. He stated that if someone looked at him in the wrong way, he would yell at them. He stated he believed he would be able to control this in a working environment. The Veteran also reported seeing floaters in his visual field. The VA psychological examiner assessed the Veteran’s cognitive impairment and other residuals of TBI. The examiner noted the Veteran was oriented to person, time, situation and place, and had normal judgment and motor activity. The examiner also noted mild memory loss and that the Veteran’s social interactions reflected frequently inappropriate behavior with some impulsive verbal aggression.

The March 2018 rating decision proposing reduction of the Veteran’s TBI rating evaluation based the decision on a March 2018 VA TBI examination. The March 2018 TBI examiner noted the Veteran still experiences migraines, but ultimately determined the Veteran did not have TBI residuals. The examiner found the Veteran’s facets of cognitive impairment were all normal with no specific discussion as to each facet. The Board finds the examination incomplete, as the examiner failed to discuss whether the Veteran’s headaches were or were not attributable to his TBI. The Veteran has asserted that he has experienced headaches ever since his inservice injury for which he was awarded service connection for TBI, therefore a discussion of subjective symptomatology, at the very least, would have been appropriate. Nevertheless, he is separately service connected for his headaches. 

Importantly, the examiner noted that no neuropsychological testing was performed during the examination. As noted above, 38 C.F.R. § 3.344(a) states that “[e]xaminations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction” and “though material improvement in the physical or mental condition is clearly reflected the rating agency will consider whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life.” The Board finds the RO failed in this regard. 

A March 2018 VA mental health examination assessed the Veteran’s cognitive impairment and other residuals of TBI and noted mild memory impairment, as well as mildly impaired judgment, visual spatial orientation, communication and neurobehavioral effects. The Veteran’s social interaction, orientation to time, place, person and situation, and motor activity were all noted as normal, with subjective symptoms that do not interfere with work. The examiner was able to separate the Veteran’s symptoms of TBI from those of his mental health disorders. The VA mental health examiner opined that the Veteran’s TBI caused mild impairment consistent with a 10 percent rating evaluation. The results of this examination which were available to the RO at the time of proposed reduction, clearly shows the Veteran’s TBI symptomatology remained as it had at the time of the award, and does not show improvement in the Veteran’s ability to function under the ordinary conditions of life and work. 

Congress has provided that a veteran’s disability rating will not be reduced unless an improvement in the disability is shown to have occurred. 38 U.S.C. § 1155. Based on the above, specifically the March 2018 VA mental health examination report, the evidence does not support a finding that overall improvement of symptomatology caused by the Veteran’s TBI occurred. Overall, the Board finds that improvement in the Veteran’s TBI was not demonstrated and, therefore, the Veteran is entitled to restoration of the 10 percent rating effective the date of the reduction, October 1, 2019.

3. Increased Rating in Excess of 30 Percent for Posttraumatic Headache Disorder.

The Veteran is currently in receipt of a 30 percent disability rating under Diagnostic Code 8100. As noted above, a rating of 50 percent under the Diagnostic Code requires evidence of migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability.

The severity of the Veteran’s service-connected headache disorder was assessed in a March 2018 VA headache examination. The Veteran reported pulsating or throbbing headache pain 2 to 3 times a week with sensitivity to light, lasting no longer than one day and with pain occurring in the back of the head. The examiner noted the Veteran’s headaches were not characteristic of prostrating attacks of pain, however the examiner noted his headache symptoms may limit his time at work. The Veteran reported that he takes over the counter medication for relief of headache pain.

A July 2018 VA treatment record shows the Veteran complained of headaches with photophobia and vomiting.

A 50 percent rating is warranted with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. “Very frequent” is not defined by the regulations. Because the criteria for a 30 percent rating requires prostrating attacks for an average of once a month, the Board finds that “very frequent” must require at least 2 or more completely prostrating and prolonged attacks per month. 

Additionally, the phrase “productive of severe economic inadaptability” has not been clearly defined by regulations or by case law. The United States Court of Appeals for Veterans Claims (Court) has noted that “productive of” can either have the meaning of “producing” or “capable of producing.” Pierce v. Principi, 18 Vet. App. 440, 445 (2004). Thus, migraines need not actually “produce” severe economic inadaptability to warrant the 50 percent rating. Id. at 445-46. Further, “economic inadaptability” does not mean unemployability, because it would undermine the purpose of regulations pertaining to a total disability rating based on individual unemployability (TDIU). Id. at 446; see also 38 C.F.R. § 4.16. The Board notes, however, that the migraines must be, at minimum, capable of producing “severe” economic inadaptability.

In the March 2018 VA mental health examination, the Veteran reported he last worked in 2012 and quit his job due to a neck injury. There is no evidence in the record indicating the Veteran’s headache disability has, at a minimum, produced severe economic inadaptability. The Board is sympathetic to the concerns that have been voiced, and notes that the Veteran’s headaches undoubtedly cause significant impairment as is suggested by the 30 percent rating that is currently assigned. However, the record contains no evidence showing that his headaches rise to the level of assignment of a rating in excess of 30 percent. The rating schedule was created as a guide to evaluating disability resulting from all types of diseases and injuries encountered, and the percentage ratings that are assigned represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. 38 C.F.R. § 4.1. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability.

Accordingly, the criteria for a rating in excess of 30 percent for the Veteran’s posttraumatic headache disorder have not been met, and the claim is denied.

4. Increased Rating in Excess of 10 Percent for TBI.

The Veteran is currently in receipt of a 10 percent disability rating under Diagnostic Code 8045. As noted above, if no facet is evaluated as “total,” assignment of the overall percentage evaluation is based on the level of the highest facet as follows: 0 = 0 percent; 1 = 10 percent; 2 = 40 percent; and 3 = 70 percent. For example, a 40 percent evaluation will be assigned if “2” is the highest level of evaluation for any facet.

In this case, the evidence does not support a finding of a 40 percent or higher impairment rating under any facet. The Veteran underwent a VA examination in March 2018 to assess the severity of his TBI residuals. The examiner assigned a 0 for each facet under the Diagnostic Code and determined the Veteran had no residuals of TBI. 

The Veteran’s service-connected headache disorder was also assessed in separate March 2018 VA examination. The Veteran reported pulsating or throbbing headache pain with sensitivity to light, lasting no longer than one day and with pain occurring in the back of the head. The examiner noted his headache symptoms may limit his time at work. Again, he is already service connected for his headaches. 

The Veteran also had a VA mental health examination in March 2018 in which the VA psychologist noted the Veteran had residuals of TBI causing overall mild impairment. For memory, attention, concentration, and executive functioning, a “1” was indicated for mild symptoms. A “1” was also indicated for mildly impaired judgment, visual spatial orientation, communication and neurobehavioral effects. His was noted to have appropriate social interaction and was oriented to person, time, place, and situation. His motor activity was normal, and his subjective symptoms do not interfere with work. 

As a result, the Board finds that a rating in excess of 10 percent for a TBI is not warranted. In sum, the evidence shows that the Veteran’s severity of his TBI has ranged (on the level of impairment) from a 1, at the worst, to a 0. For these reasons, the Board finds that the criteria necessary for demonstrating entitlement to a 40 percent rating or higher for TBI are not met at any point during the appeal period and, therefore, a rating in excess of 10 percent for TBI must be denied.

5. Entitlement to a 10 Percent Rating for Multiple Noncompensable Service-Connected Disabilities.

When a veteran suffers from two or more separate permanent service-connected disabilities of such character as clearly to interfere with normal employability, even though none of the disabilities may be of compensable degree under the Schedule for Rating Disabilities, the rating agency is authorized to apply a 10 percent rating, but not in combination with any other rating. 38 C.F.R. § 3.324. This provision is predicated on the existence solely of noncompensable service-connected disabilities. Therefore, once a compensable evaluation for any service-connected disability is awarded, the applicability of § 3.324 is rendered moot.

Significantly, as noted above, the Veteran’s headache disorder and TBI claims have been restored to compensable ratings as of October 1, 2019. The provisions of 38 C.F.R. § 3.324 are predicated on the existence solely of non-compensable service-connected disabilities. Once a compensable evaluation for any service-connected disability has been awarded, the applicability of 38 C.F.R. § 3.324 is rendered moot. 

(Continued on the next page)

 

The issue of compensation under 38 C.F.R. § 3.324 is moot and must be denied as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

 

 

H.M. WALKER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T.N. Shannon

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.