**Gerald M. HOHOL, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1002.**

United States Court of Veterans Appeals.

Submitted Sept. 25, 1991.

Decided Feb. 7, 1992.

Michael P. Horan, Washington, D.C., was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael P. Butler, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and HOLDAWAY, Associate Judges.

NEBEKER, Chief Judge:

Appellant, Gerald M. Hohol, appeals the May 23, 1990, Board of Veterans' Appeals (BVA or Board) decision which reduced his disability rating for post traumatic stress disorder (PTSD) from 100% disabling to 70% disabling. We hold the Board's finding that the veteran had sustained material improvement under the ordinary conditions of life to be clearly erroneous. Furthermore we hold that the Board committed legal error when it failed to consider appellant's case under 38 C.F.R. § 4.16(c) (1990).

I.

The veteran performed military service from August 1965 through April 1969, which included combat duty in Vietnam. On December 30, 1983, he underwent an examination for compensation and pension purposes. The Veterans' Administration (now the Department of Veterans Affairs) (VA) doctor reported that appellant was "markedly tense" and anxious, that his sleep pattern was disturbed by nightmares, and that he hallucinated often. R. at 23. The doctor also found appellant "alert and fully oriented" and his conversation "to be relevant [showing] no looseness of associations." Appellant was diagnosed as suffering from PTSD. Based on this examination, the VA Regional Office (RO) granted appellant service connection for PTSD, and rated it as 100% disabling on February 1, 1984.

Appellant was examined again for compensation and pension purposes on April 19, 1985. He reported that he had trouble sleeping and suffered from hallucinations of his time in Vietnam. He also told the examiner that he had no social life and spent all of his time caring for his two boys; his speech was relevant and coherent. R. at 38. The examiner found him to be unemployable and still suffering from

PTSD. On May 22, 1985, an RO decision continued his disability rating at 100%.

On October 12, 1988, he was examined again by VA. Again he reported sleep disturbance, constant thoughts of the war, and nightmares. He also reported having trouble with most people, but being tolerant of the ill and those he was capable of helping. The report described him as "cooperative, coherent, relevant, well oriented, competent, tense and anxious." The report also noted that appellant had not worked for eight years, and was seen weekly at the Mental Health Clinic at the Bay Pines Facility (Bay Pines Facility). Appellant was again diagnosed as suffering from PTSD: "chronic, active, mild to moderate." R. at 41–42. Based on that examination, and without considering medical records from the Bay Pines Facility, the RO reduced appellant's rating from 100% disabling to 70% disabling. The RO made no mention of any regulation other than 38 C.F.R. § 3.105(e) (1988), but said that medical records from the Bay Pines Facility were being requested and that appellant would be reexamined in the future. R. at 43.

On December 14, 1988, appellant received a letter from VA which told him that VA had "determined that there has been an improvement in your post-traumatic stress disorder. This disability is now evaluated 70 percent disabling." R. at 68. Appellant submitted a notice of disagreement on January 18, 1989, and asked VA to obtain all of his medical records from the Bay Pines Facility. VA sent appellant a statement of the case specifying the issue as "increased evaluation for service connected [PTSD]", citing 38 U.S.C. § 355, 38 C.F.R. § 4.132, 38 C.F.R. § 3.102, and 38 C.F.R. § 3.321 (1989) as the grounds for denying the veteran an increase. R. at 71–74. A rating decision dated April 20, 1989, confirmed the 70% rating. R. at 75.

Medical records from the Bay Pines Facility disclosed that appellant began treatment in October of 1984. Dr. Leo R. Ryan, a clinical psychologist at the Bay Pines Facility, reported that as of December 27, 1988, appellant's "condition [remained] chronic and severe." R. at 64. Dr. Ryan also noted that appellant had "marked sleep disorder and frequent and intense nightmares which in turn [produced] fatigue and [augmented] his chronic major depressive state." *Id.* On January 3, 1989, Dr. Ryan wrote that appellant was unemployed and "it [appeared] unlikely that he will be able to obtain or maintain gainful employment due to the depth of his psychopathology." R. at 66–67.

When these records were reviewed, VA issued a supplemental statement of the case. R. at 77–79. A rating decision dated June 26, 1989, continued the 70% rating. R. at 80. On July 13, 1989, appellant appealed to the BVA. In his appeal form, appellant wrote that he was totally isolated from the community, visited his doctors once a week, and was totally unable to obtain or retain employment; he requested that VA obtain additional outpatient treatment records. R. at 81. On March 31, 1989, VA issued yet another supplemental statement of the case. R. at 84–86.

Appellant underwent a special neuropsychiatric examination on October 30, 1989. The examiner reported, inter alia, that appellant suffered from PTSD and was unemployable. R. at 108–109. A subsequent rating decision dated November 21, 1989, continued the 70% rating. VA issued another supplemental statement of the case on December 1, 1989.

On May 23, 1990, the Board confirmed the 70% rating. Although the Board phrased the issue on appeal as entitlement to an increased rating for PTSD, the Board noted that the veteran's appeal stemmed from the December 1988 rating action which reduced his 100% schedular evaluation to 70%. Consequently the Board's decision focused on the correctness of the December 1988 rating action. The Board applied 38 C.F.R. §§ 3.343 and 3.344 (1990) and found it clear from the record that

there has been a material improvement in pertinent aspects of [appellant's] disability picture, at least to an extent that he no longer experiences totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality, nor is he demonstrably unable to obtain or re-

tain employment, despite his not having worked for a period of several years. R. at 8.

## II.

 PTSD is rated under 38 C.F.R. § 4.132, Diagnostic Code 9210 (1990) (DC 9210) which characterizes 100% and 70% disabilities as follows:

100 percent:

Active psychotic manifestations of such extent, severity, depth, persistence or bizarreness as to produce total social and industrial inadaptability.

70 percent:

With lesser symptomology such as to produce severe impairment of social and industrial adaptability....

Once rated as totally disabled (100%), a veteran will not have his rating reduced without a showing of material improvement:

a) *General.* Total disability ratings ... will not be reduced ... without examination showing material improvement in physical or mental condition. Examination reports showing material improvement must be evaluated in conjunction with all the facts of the record, and consideration must be given particularly to whether the veteran attained improvement under the ordinary conditions of life, i.e., while working or actively seeking work or whether the symptoms have been brought under control by prolonged rest....

38 C.F.R. § 3.343(a). In appellant's case, VA failed to show, through an examination, as required by section 3.343(a), that appellant had materially improved, based on the record and under the ordinary conditions of life. The regulation provides that VA must compare the examination which purports to show that the veteran's condition has materially improved, with the last examination continuing his 100% rating. The basis for comparison is not the examination on which the veteran was first awarded total disability. *Karnas v. Derwinski,* 1 Vet.App. 308 (1991).

A comparison of appellant's last examination report of October 12, 1988 (1988

exam), which reduced his 100% rating, with the next-to-the-last examination of April 1, 1985 (1985 exam), which maintained his 100% rating, shows no indication of material improvement. Although the 1988 exam diagnosed appellant's PTSD as "chronic, active, mild to moderate" and the 1985 exam simply diagnosed him as having PTSD, his symptoms were nearly identical in each examination, with the exception that appellant's hallucinations are not mentioned in the 1988 exam.

Even if this difference between the two examinations should qualify as "material improvement," and we do not believe it does, such a finding cannot be supported when considered in conjunction with all the medical evidence of record as required by 38 C.F.R. § 3.343(a), especially since outpatient reports from the Bay Pines Facility indicate that appellant's condition remained essentially the same since he first began treatment there in 1984.

Furthermore, neither the 1985 exam nor the 1988 exam shows improvement in appellant's condition "while working or actively seeking work" as required by 38 C.F.R. § 3.343(a). Section 3.343(a) provides that VA, when evaluating medical examinations showing material improvement, must give consideration to whether the veteran attained improvement under the "ordinary conditions of life, i.e., while working or actively seeking work," or whether the symptoms improved because of prolonged rest or a "regimen which precludes work." If the symptoms improved because of rest, and not under the ordinary conditions of life, as is the case here, a veteran's total disability cannot be reduced until "reexamination after a period of employment (3 to 6 months)." 38 C.F.R. § 3.343(a). No evidence suggests that appellant was working or seeking work. In fact, both the examinations conducted by the VA and the outpatient reports indicate that appellant was unemployable.

Not only was the VA careless in applying its regulations, but it failed to read its medical examinations carefully. For example, in the October 14, 1988, VA examination, the examiner reported:

[Appellant] is cooperative, coherent, relevant, well oriented, competent, tense and anxious. His anxiety relates to random thoughts, his two sons and their behavior in school and at home. The youngest son got involved with alcohol and crack cocaine and was in the Horizon Hospital for two to three months and then transferred to a hospital in Bradenton and was there about four months. He is off alcohol and drugs now, for about the past nine months. He is back in school and seems to be doing okay.

R. at 42. The Board, in its May 23, 1990, decision, cited the fact that *appellant* had been off drugs for nine months in support of its conclusion that appellant's condition had improved. Counsel for the Secretary was equally inattentive to the record: "The veteran was off drugs and alcohol for the last nine months; he was attending school and seemed to be doing well." (Br. of Appellee at 7).

The BVA determined, without evidentiary support, that appellant's PTSD materially improved. This finding is clearly erroneous. In defining clearly erroneous, the Court has stated:

> The Supreme Court has defined the "clearly erroneous" standard as follows: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990) (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). Here, although there is some evidence to support a finding of slight improvement in appellant's condition if the October 14, 1988, examination alone is considered, we believe, after considering all the medical evidence of record, that a mistake has been made; the finding simply is not plausible in light of all the evidence.

VA's erroneous finding is not surprising given that no mention was made of 38 C.F.R. § 3.343(a) until the May 23, 1989, Board decision which took notice of the regulation and found material improvement. Neither the numerous rating decisions nor the various statements of the case, noted earlier, mentioned the regulation which governs the reduction of total disability ratings.

We further note the Board's failure to apply 38 C.F.R. § 4.16(c), which controls total disability ratings for compensation based on unemployability of the individual veteran:

> [Where] the only compensable service-connected disability is a mental disorder assigned a *70 percent evaluation, and such mental disorder precludes a veteran from securing or following a substantially gainful occupation ... the mental disorder shall be assigned a 100 percent schedular evaluation under the appropriate diagnostic code.*

38 C.F.R. § 4.16 (emphasis added). Since the Board found that appellant's condition warranted a 70% rating and all VA examinations indicated he was unemployable, the Board erred when it failed to consider the appellant's claim under 38 C.F.R. § 4.16(c). We have invariably held that the BVA is not free to ignore its own regulations, even if the appellant fails to raise the issue on appeal. *See, e.g., Akles v. Derwinski,* 1 Vet.App. 118 (1991); *Fugere v. Derwinski,* 1 Vet.App. 103 (1990); *Bentley v. Derwinski,* 1 Vet.App. 28 (1990). For the reasons stated above, we REVERSE the decision of the BVA and REMAND it with directions to restore the appellant's 100% rating retroactive to the effective date of its reduction.