Maynard S. **DOFFLEMYER**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 90–1078.

United States Court of Veterans Appeals.

Argued Feb. 24, 1992.

Decided March 31, 1992.

As Amended April 8 and April 21, 1992.

Joseph A. Violante, Washington, D.C., for appellant.

Michael P. Butler, with whom Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before KRAMER, FARLEY and IVERS, Associate Judges.

FARLEY, Associate Judge:

Appellant, Maynard S. Dofflemyer, appeals a Board of Veterans' Appeals (BVA or Board) decision of June 4, 1990, which purported to deny an increased rating for undifferentiated schizophrenia for which appellant had been service-connected at 100% from May 21, 1969, until its reduction to 10% effective May 1, 1989. Appellant argues that the Department of Veterans Affairs Regional Office (VARO) ratings decision of February 17, 1989, reducing his disability rating from 100% to 10%, and the BVA decision affirming the reduction, are void *ab initio*, as both the VARO and the BVA failed to apply 38 C.F.R. §§ 3.343(a) and 3.344(a). Because the Court finds that the BVA disregarded the provisions of § 3.343(a) and § 3.443(a), under 38 U.S.C. § 7261(a)(3) (formerly § 4061(a)(3)), we are compelled to reverse the BVA decision and remand the matter with a direction that appellant's former 100% rating be reinstated with an effective date of May 1, 1989.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Following a period of hospitalization, appellant was discharged from service on May 20, 1969. He received a 100% disability rating for undifferentiated schizophrenia, effective from the day following discharge, May 21, 1969. The 100% rating was confirmed in a rating decision dated November 22, 1972, which also noted that a reexamination should take place in November 1974. R. at 10. However, there is no indication in the record of a 1974 examination or any further rating activity until an examination was requested on February 2, 1989. R. at 11. The examiner was asked to "Please expedite" and to determine "Is vet working now? How much has vet worked since 1972?" *Id.* The "expedited" examination took place on February 13, 1989, with the examiner noting he had reviewed the veteran's claims file but that the veteran had not been seen for compensation and pension purposes since 1972. The examiner concluded:

> In summary, the veteran's current adjustment appears to be significantly better than it was in 1974. However, it would seem very unlikely that at this point in his life he could successfully go out and get a fulltime job and support his family. He hasn't worked in 20 years, has a schizophrenic diagnosis, and has a low tolerance for stress.
>
> Diagnosis: Schizophrenic Disorder, Undifferentiated Type, in remission.

R. at 14.

Based solely upon this examination, the veteran's 100% rating was reduced to 10% on February 17, 1989; the reduction became effective on May 1, 1989. The veteran requested a hearing and submitted affidavits in support of his claim from his wife (R. at 21–22), daughter (R. at 23) and his mother (R. at 28). Essentially they testified as to the veteran's chronic inability to

sleep at night, his assaultive behavior if awakened from sleep; specifically, the veteran's mother averred:

> he can't eat or sleep.... He's had to go on nerve pills again because he's not able to work ... He jumps up and beats the walls at night and screams.... He can't do anything without breaking out in sweat and gets weak and shakes all over.

R. at 28. The veteran also submitted a report, dated March 23, 1989, from a current treating physician, Charles S. Miller, M.D., indicating that the veteran was being treated with "chronic medication" for "a chronic nervous disorder." R. at 30.

At a hearing held on April 7, 1989, appellant, his wife and his father testified in support of the reinstatement of 100% disability. The veteran's family confirmed the veteran's sleep problems, his inability to perform simple chores, and his difficulty in dealing with family members and others. R. at 43–54. The veteran testified that he simply had "[no] energy ... anymore", that he would try to work around the house or maintain his car, "but it seems like I mess up more than I do good.... [if something goes wrong, I] get aggravated and get nervous [and need to] go lay down." R. at 34. The veteran also related that he often loses control and to "keep from hitting [his daughter or wife] ... tries to get away from them or do something." R. at 35. He expressed that he had serious doubts whether he could function outside his own home. The hearing officer confirmed and continued the 10% evaluation. R. at 56.

On April 19, 1989, the veteran filed a Notice of Disagreement with the reduction, perfected his appeal to the BVA and requested a formal hearing. R. at 63, 58–9. The veteran and his father testified before the Board on May 3, 1990. R. at 76–86. Specifically, the veteran related that he often was unable to control his anger and would react by "throwing things" and had recently choked his wife (R. at 78), and that he was taking "nerve pills". R. at 83. Further, he stated that he was "[unable to] go around crowds" and if he had contact with any friends, he would interact for only

"10 or 15 minutes, sometimes a half hour ..." R. at 80. He stated he ultimately feared that the severe mental problems he experienced in service "might come back". R. at 81.

The veteran's treating physician, Charles S. Miller, M.D., submitted an additional letter report dated May 3, 1990. The doctor reported findings of "constant agitation, depression, insominia [sic] and tremor of both hands" which he concluded were "secondary to [the veteran's] history of ... battle fatigue [in service]." Further, he stated: "I feel this patient is not able to hold gainful employment and coping [sic] with the stress of the modern day world." R. at 88.

On appeal, the BVA reviewed appellant's medical records, treating physician reports, affidavits of his family members and hearing testimony. The Board found that the 1989 exam, private medical records and observation of appellant at the hearing, weighed along with the family members' statements, "clearly demonstrated material improvement." The Board determined Dofflemyer's industrial impairment was not more than "slight", and "[denied] entitlement to an increased evaluation for undifferentiated schizophrenia". *Maynard S. Dofflemyer*, BVA No. 90–17389, at 5 (June 4, 1990). A timely appeal to this Court was filed on October 1, 1990.

Appellant initially sought summary reversal, arguing that the BVA decision was void *ab initio* for failure to apply controlling regulations. The Secretary, in turn, moved for a remand to permit the BVA to provide the requisite statement of reasons or bases for its findings and conclusions. The Court denied both motions in an Order dated August 16, 1991, and directed that the parties submit briefs on the merits. Oral argument was held on February 24, 1992.

## II.

### APPLICABLE LAW

The BVA incorrectly phrased the issue in terms of whether appellant was entitled to an increased rating; in fact and in law, the

issue presented to the BVA, and to this Court, is not whether the veteran was entitled to an increase but whether the reduction of appellant's rating from 100% to 10% was proper. *See Peyton v. Derwinski*, 1 Vet.App. 282, 286 (1991) ("This is a rating reduction case, not a rating increase case.").

■ A rating which has been in effect for 20 years or more is "protected", a fact which may have been the reason an "expedited" examination was sought. 38 C.F.R. § 3.951 (1991). In this instance, the reduction of the veteran's rating from 100% to 10% occurred on May 1, 1989, which is 19 years, 11 months, and 10 days from the date of the original 100% rating. Therefore, because it was 20 days short of having been in effect for 20 years, this veteran's rating was not "protected" by § 3.951.

There is no question that a disability rating may be reduced; however, the circumstances under which rating reductions can occur are specifically limited and carefully circumscribed by regulations promulgated by the Secretary. 38 C.F.R. § 3.343(a) (1991) provides, in pertinent part, as follows:

(a) *General.* Total disability ratings ... will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition. Examination reports showing material improvement must be evaluated in conjunction with all the facts of record, and consideration must be given particularly to whether the veteran attained improvement under the ordinary conditions of life, i.e., while working or actively seeking work or whether the symptoms have been brought under control by prolonged rest, or generally, by following a regimen which precludes work, and if the latter, reduction from total disability ratings will not be considered pending reexamination after a period of employment (3 to 6 months).

Further, 38 C.F.R. § 3.344(a) and (c) (1991), provide in relevant part:

(a) *Examination reports indicating improvement....* Ratings on account of diseases subject to temporary or episodic improvement, e.g., manic depressive or other psychotic reaction, epilepsy, psychoneurotic reaction, ... will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated.

(c) *Disabilities which are likely to improve.* The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more).

■ Read together, §§ 3.343(a) and 3.344(a) provide that, unless all the evidence of record establishes that a claimant's condition has undergone sustained material improvement, a total disability rating that has existed for five years or more may not be reduced on any one examination. See *Lehman v. Derwinski*, 1 Vet. App. 339, 341–342 (1991); *Karnas v. Derwinski*, 1 Vet.App. 308, 313–314 (1991). Furthermore, the

VA, when evaluating medical examinations showing material improvement, must give consideration to whether the veteran attained improvement under the "ordinary conditions of life, i.e., while working or actively seeking work," or whether the symptoms improved because of prolonged rest or a "regimen which precludes work." If the symptoms improved because of rest, and not under the ordinary conditions of life, ... a veteran's total disability cannot be reduced until "reexamination after a period of employment (3 to 6 months)." 38 C.F.R. § 3.343(a).

*Hohol v. Derwinski*, 2 Vet.App. 169, 172 (1992). There must be "improvement in either the appellant's 'social and industrial inadaptability' within the context of D[iagnostic] C[ode] 9210 or 'while working or actively seeking work'". *Karnas* at 311. Moreover, a finding of "material improvement" must be supported with a comparison of the previous and current physical and mental condition. *Id.* at 310–11.

It is beyond question that the VA must follow its own regulations. See *Browder v. Derwinski*, 1 Vet.App. 204, 205 (1991),

and the cases cited therein. The Court is compelled to "hold unlawful and set aside" a rating action which resulted from the failure to follow applicable statutory or regulatory commands. 38 U.S.C. § 7261(a)(3). Such an action is necessarily "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and therefore void *ab initio. Id.; see Schafrath v. Derwinski,* 1 Vet.App. 589, 595–6 (1991).

## III.

### APPLICATION OF THE LAW TO THE FACTS

■ By its terms, the rating decision of February 17, 1989 (R. at 15), which reduced appellant's rating from 100% to 10%, was based solely upon the examination conducted on February 13, 1989. R. at 12–14. Indeed, the bulk of the rating decision consists solely of a paraphrase of the examination report and, from this, the rating board concluded that:

> The veteran does not have any manifestations or symptoms regarding a psychotic condition. He is not on medication. He has not been hospitalized or treated for a psychiatric condition for years. A reduction is in order, with a 10% evaluation assigned for this condition.

R. at 16. However, as proscribed by §§ 3.343(a) and 3.344(a), a total disability rating cannot be reduced on the basis of a single examination unless **all** the evidence of record establishes that a claimant's condition has undergone sustained material improvement. In assessing such improvement, consideration must be given to whether the veteran attained improvement under the "ordinary conditions of life, i.e., while working or actively seeking work". 38 C.F.R. § 3.343(a). The rating board's decision fails to measure up to these regulatory requirements. Furthermore, the Board chose to ignore the concluding assessment of the examination physician:

> In summary, the veteran's current adjustment appears to be significantly better than it was in 1974. However, it would seem very unlikely that at this point in his life he could successfully go out and get a fulltime job and support his family. He hasn't worked in 20 years, has a schizophrenic diagnosis, and has a low tolerance for stress.

R. at 14. Thus, *all* of the evidence did not support the degree of material improvement found by the rating board. Moreover, in view of the statements of the examining physician that the veteran had not worked for over 20 years and that it seemed "very unlikely" that the veteran could get a fulltime job, there is simply no basis in the record before the rating board which could support a conclusion that this veteran attained improvement under the "ordinary conditions of life, i.e., while working or actively seeking work". Therefore, the rating board's decision was the product of a failure to follow the controlling regulations; the BVA compounded the error when it considered the veteran's appeal of the rating decision.

The BVA, which of course also must follow the Secretary's regulations, was bound to consider the additional evidentiary material submitted by the veteran. Accordingly, under 38 C.F.R. § 3.343(a), the BVA could uphold the decision of the rating board based upon a single examination only if "all of the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated". By the time the BVA considered the appeal, the record contained considerably more evidence than had been available to the rating board. The veteran's own testimony as well as that of his family members evinced his inability to cope with "the ordinary conditions of life". His family and his treating physician corroborated the veteran's assertions that, despite daily medication, he had problems sleeping, could not tolerate day-to-day stress and interacted only minimally with those outside his family. Consequently, as "all of the evidence" did not support the reduction in the veteran's total disability, the rating could not be reduced solely based on the one examination. The Board, therefore, was required by 38 C.F.R. § 3.343(a) to conduct a further examination.

Focusing solely on the veteran's improvement from a medical perspective, and highlighting the diagnosis that the veteran's schizophrenia is in remission, the Secretary argues, in effect, that the 10% rating should stand because it is accurate. It may well be that the Secretary is correct and that the veteran's present degree of impairment is indeed "slight". However, as we said in *Bentley v. Derwinski*, 1 Vet.App. 28 (1990), after-the-fact justification cannot resurrect a flawed rating, one which was arrived at in derogation of the regulations promulgated by the Secretary. By failing to apply the provisions of 38 C.F.R. §§ 3.343(a) and 3.344(a), the BVA exceeded its discretionary authority. Consequently, where, as here, the Court finds that the decisions by the BVA are "not in accordance with the law", the Court must hold unlawful and set aside that decision. *See* 38 U.S.C. § 7261(a)(3).

## IV.

### CONCLUSION

It is the holding of the Court that the Board of Veterans' Appeals failed to apply 38 C.F.R. §§ 3.343(a) and 3.344(a), thus rendering its decision to reduce appellant's disability rating from 100% to 10% void *ab initio* as not in accordance with the law. Accordingly, the BVA decision of June 4, 1990, is REVERSED and the case REMANDED to the BVA with instructions that appellant's prior disability rating of 100% for undifferentiated schizophrenia and the corresponding benefits be reinstated effective to May 1, 1989.