# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-4425

LOUIS J. STERN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided April 20, 2021)

*Thomas E. Sullivan*, of Washington, D.C., was on the brief for the appellant.

*James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Anna Whited*, Deputy Chief Counsel; and *Amanda Radke*, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and MEREDITH, *Judges*.

MEREDITH, *Judge*: The appellant, Louis J. Stern, through counsel appeals an April 25, 2018, Board of Veterans' Appeals (Board) decision that found that the reductions in disability ratings for right arm polyneuropathy from 30% to 10%, left arm polyneuropathy from 20% to 10%, right leg polyneuropathy from 20% to 10%, and left leg polyneuropathy from 20% to 10% were proper, and denied entitlement to disability compensation for a seizure disorder as secondary to a service-connected disability. Record (R.) at 1-18. The appellant does not raise any argument concerning the Board's denial of disability compensation for a seizure disorder. The Court therefore finds that he has abandoned his appeal of that issue and will dismiss the appeal as to that issue. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc). This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

On November 12, 2019, the Court issued a memorandum decision holding that the Board provided inadequate reasons or bases for finding the rating reductions proper and vacating and remanding the matters. On December 10, 2019, the appellant filed a motion for reconsideration or, in the alternative, for panel review, arguing that reversal is the proper legal remedy when the

Board's analysis is incomplete in a rating reduction case.[1] The Court withdrew its previous memorandum decision and granted the motion for panel review to address the appropriate remedy when the Board, in reducing a non-protected rating, fails to conduct the second part of the analysis required by *Brown v. Brown*, 5 Vet.App. 413, 421 (1993)—namely, whether an improvement in the disability reflects an actual improvement in the ability to function under the ordinary conditions of life and work. The Court holds that, here, the proper remedy is reversal of the Board's decision and reinstatement of the disability ratings. Accordingly, the Court will reverse the Board's decision finding that the reductions in disability ratings were proper for bilateral arm and leg polyneuropathy; reinstate the appellant's 30% disability rating for right arm polyneuropathy, and 20% disability ratings each for polyneuropathy of the left arm, and right and left legs; and remand the matters for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from August 1988 to March 1989. R. at 169. In July 2007, a VA regional office (RO) granted him disability compensation for right and left arm polyneuropathy rated at 30% and 20% disabling, respectively, under Diagnostic Code (DC) 8515 for moderate paralysis of the median nerve based on impaired finger to nose movement[2]; and bilateral leg polyneuropathy rated at 20% each under DC 8520 for moderate incomplete paralysis of the sciatic nerve based on abnormal gait and imbalance. R. at 516-21. All evaluations were effective March 29, 2007. *Id.*

A February 2008 neurology treatment record shows that the appellant reported increasing numbness in his hands, as well as difficulty dressing himself. R. at 448. He also reported that he was not able to do carpenter work. *Id.* The appellant filed a claim for increased ratings for his polyneuropathy disabilities in March 2008, R. at 508, and underwent a VA examination the following month, R. at 482-85. At that time, the appellant reported numbness from his elbows down to his hands and balance difficulty due to numbness from his knees down to his feet. R. at 482. Clinical evaluation revealed normal muscle strength, tone, and deep tendon reflexes in all

---

[1] The Court granted the appellant's December 3, 2019, motion for an extension of time to file his motion for reconsideration or panel review.

[2] DC 8515 provides for a 30% disability rating for moderate incomplete paralysis of the median nerve for the major extremity, and a 20% disability rating for moderate incomplete paralysis of the median nerve for the minor extremity. 38 C.F.R. § 4.124a, DC 8515 (2007).

extremities, and normal gait. R. at 484. There was no evidence of upper extremity drift or muscular atrophy. *Id.* Sensory examination indicated "decreased touch, pin prick, vibration and temperature [sensation] in [a] stocking-like distribution involving [all] extremities." *Id.* Nerve conduction studies were within normal limits for all extremities; however, the examiner noted that nerve conduction studies performed at the John Cochran VA Medical Center reflected abnormal electrophysiological studies consistent with generalized sensory motor neuropathy. R. at 484-85. The examiner opined that "there d[id] not appear to be any significant change on today's examination compared to his examination performed . . . in 2007." R. at 485. The RO continued the disability ratings in a September 2008 rating decision. R. at 428-34.

The appellant underwent another VA examination in April 2010, R. at 389-98, pursuant to the RO's request to reevaluate his service-connected disabilities, R. at 410-12. He reported constant numbness from his elbows to his hands and from his knees to his feet, as well as "[d]ifficulty grasping hand tools and maintaining grip." R. at 389, 391. The examiner documented neuralgia in all extremities. R. at 390. There was no evidence of muscle wasting or atrophy or loss of fine motor control. *Id.* Deep reflex tests and sensory examination were normal. R. at 390-91. The examiner concluded that the polyneuropathies were "mild." R. at 391. Based on the examination findings showing that his conditions were mild in nature, the RO proposed reducing the appellant's polyneuropathy disability ratings to 10% for each extremity in a July 2010 rating decision. R. at 379-82.

The appellant submitted a statement in August 2010 that he did not believe that his conditions had improved and requested another examination, R. at 365, which he underwent in June 2011, R. at 340-42. At that time, he stated that he had "almost constant numbness and tingling of his hands and feet." R. at 340. Clinical evaluation indicated that he had: Normal strength and tone; no upper extremity drift or muscular atrophy; normal deep tendon reflexes; normal gait; and "slightly reduced pin prick, temperature, and vibration [sensation] in [a] stocking[-]glove[-]like distribution in [all] extremities." R. at 341. The examiner noted that nerve conduction studies performed the previous month "did not show any evidence of polyneuropathy[;] however[,] he possibly has a small fiber neuropathy, which cannot be determined by nerve conduction studies." *Id.* In an October 2011 rating decision, the RO reduced his polyneuropathy ratings to 10% each, effective January 1, 2012. R. at 306-11. The appellant filed a Notice of Disagreement, R. at 287-90, and perfected his appeal to the Board, R. at 188, 189-212.

3

In April 2018, the Board found that the rating reductions were proper. R. at 2-16. This appeal followed.

## II. ANALYSIS

### A. The Board's Decision and the Parties' Arguments

The Board initially noted that, because the appellant's ratings had been in effect for less than 5 years, the special protections afforded in 38 C.F.R. § 3.344 were not applicable. R. at 8. The Board further noted that, in any rating reduction case, a determination of whether a rating reduction was proper requires finding "that an improvement in a disability has actually occurred [and] that that improvement actually reflects an improvement in the [appellant's] ability to function under the ordinary conditions of life and work." R. at 7. The Board then found that the evidence supported the reduction in the appellant's disability ratings to 10% for each extremity, effective January 1, 2012. R. at 8. The Board considered medical evidence of record, including the VA examination reports from April 2008, April 2010, and June 2011, to determine that "[t]here was clear improvement in the objectively determined neurological test findings." R. at 9, 13; *see* R. at 9-10, 11-13.

Specifically, the Board summarized the appellant's report of numbness in his extremities and the clinical evaluations that revealed normal tone, deep tendon reflexes, and gait, and no muscle atrophy. R. at 9-12. The Board further noted that the April 2008 and June 2011 examination reports reflected normal muscle strength and decreased sensation, and the appellant reported "difficulty grasping hand tools and maintaining grip" and had normal sensation at the April 2010 examination. R. at 9; *see* R. at 9-12. Additionally, the Board noted that a November 2012 neurology consult report indicated that the appellant continued to report numbness in his hands and feet, though EMG studies were normal, and physical evaluation revealed normal finger to nose movement in the upper extremities; normal gait, station, strength, reflexes, and coordination in the lower extremities; and decreased sensation at the top of the foot and toes. R. at 10, 12. Accordingly, the Board concluded that "a clear preponderance of the evidence of record demonstrates that the reduction in rating[s]" was proper. R. at 13; *see* R. at 11.

The appellant argues that the Board applied an incorrect legal standard for determining whether the reductions in his polyneuropathy ratings were proper, because it "only applied one element of the two-element test [prescribed in *Brown*] to determine whether a rating reduction is

proper." Appellant's Brief (Br.) at 4. Specifically, he acknowledges that the Board considered whether there was actual improvement in his condition based on VA examination testing. *Id.* at 5. However, he asserts that the Board failed to consider the effects of his disabilities on the ordinary conditions of his life and work, particularly given his statements that his ability to work as a contractor had not improved; he cannot do carpenter work; and he has difficulty dressing himself, grasping hand tools, and maintaining grip. *Id.* at 5-6 (citing R. at 391, 448-49). He contends that, because the Board erred by failing to address the second element (i.e., whether there is an improved ability to function under the ordinary conditions of life and work), the Board's error amounts to a failure to observe the applicable law rendering the Board decision void ab initio and requiring reversal and reinstatement of the disability ratings. Appellant's Br. at 4-6; Reply Br. at 1-4; Motion for Reconsideration (Motion) at 8-9.

The Secretary concedes that the Board provided inadequate reasons or bases for finding that the reductions were proper but asserts that remand rather than reversal of the Board decision is the appropriate remedy. Secretary's Br. at 9, 12. In this regard, he points to several errors in the Board's statement of reasons or bases, including, as argued by the appellant, that the Board did not address whether there was an improvement in his ability to function under the ordinary conditions of life and work. *Id.* at 9. He contends that reversal is appropriate in circumstances where VA failed to abide by the procedural protections for rating reductions or the Board improperly shifted the burden of proof by requiring the claimant to prove entitlement to the previously assigned higher ratings. *Id.* at 10-13. However, he avers that reversal is not warranted here, where the appellant raises only a reasons or bases error. *Id.*

In his reply brief, the appellant maintains that the Board applied an incorrect legal standard because it did not determine whether there was improvement in his ability to function under the ordinary conditions of life and work. Reply Br. at 1. He further argues that reversal is warranted because the Board implicitly shifted the burden of proof by failing to make that determination. *Id.* at 2. In his motion for reconsideration or for panel review, he contends that the appropriate remedy in a rating reduction case does not turn on whether the Board's error was failing to observe the laws pertinent to those types of cases or merely providing an inadequate statement of reasons or bases when applying those laws. Motion at 1-2. In that regard, he argues that prior precedential decisions have held that reversal and reinstatement is appropriate when the Board erred only in providing inadequate reasons or bases for its decision. *Id.* at 2-3.

B. Discussion

*1. Legal Landscape*

Historically, the Court's review of rating reduction cases has generally revolved around 38 C.F.R. §§ 3.105(e), 3.343, and 3.344 and the protections afforded therein. In part, § 3.105 requires VA to notify a claimant "of the contemplated action and furnish[] detailed reasons therefor"; afford "60 days for the presentation of additional evidence to show that compensation payments should be continued at the[] present level"; provide an opportunity for a predetermination hearing; and delay the effective date of the reduction until 60 days after notice of the final rating action. 38 C.F.R. § 3.105(e), (i) (2020). Section 3.343 prohibits the reduction of a total disability rating "without examination showing material improvement in physical or mental condition . . . . and consideration . . . given particularly to whether the veteran attained improvement under the ordinary conditions of life." 38 C.F.R. § 3.343 (2020). For cases where disability ratings at any level have continued for 5 years or more, § 3.344 provides:

> Ratings on account of diseases subject to temporary or episodic improvement . . . will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated. . . . Moreover, though material improvement in the physical or mental condition is clearly reflected the rating agency will consider whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life.

38 C.F.R. § 3.344(a) (2020); *see Brown*, 5 Vet.App. at 418 (holding that § 3.344 applies to ratings that have been in effect for 5 years or more, as calculated from the effective date assigned for the rating to the date on which the reduction becomes effective). Further "[i]f doubt remains, . . . the rating agency will continue the rating in effect." 38 C.F.R. § 3.344(b).

Additionally, in *Brown*, the Court held that, although § 3.344 applies only to ratings that have been in effect for 5 years or more, pursuant to §§ 4.2[3] and 4.10,[4] "in any rating-reduction case not only must it be determined that an improvement in a disability has actually occurred but also that that improvement actually reflects an improvement in the veteran's ability to function under

---

[3] 38 C.F.R. § 4.2 provides, in pertinent part, that rating specialists must review examination reports "in the light of the whole recorded history," and "[e]ach disability must be considered from the point of view of the veteran working or seeking work." 38 C.F.R. § 4.2 (2020).

[4] 38 C.F.R. § 4.10 provides, in pertinent part, that "[t]he basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment." 38 C.F.R. § 4.10 (2020).

the ordinary conditions of life and work." 5 Vet.App. at 421. The Court further determined that, in rating reduction cases, the burden is on the Board "to establish, by a preponderance of the evidence . . . that a rating reduction was warranted." *Id.* In that regard, the Court first noted that the Board, citing 38 U.S.C. § 5107(b) and 38 C.F.R. § 4.7,[5] had concluded that the appellant's disability picture did not more nearly approximate the criteria for a 30% disability rating and that the preponderance of the evidence was thus against reinstatement of that rating. *Id.* The Court explained that the Board's conclusion was contrary to section 5107(b), which provides that a claim "must be resolved in the veteran's favor unless 'the Board concludes that a fair preponderance of evidence weighs against the claim.'" *Id.* (quoting *Gilbert v. Derwinski*, 1 Vet.App. 49, 58 (1990)). Further, the Court found that, "in view of the posture of this rating-reduction case and the applicability of § 3.344(a) requiring a finding of 'material improvement,'" the Board erroneously applied § 4.7 to require that the disability more nearly approximated the higher rating criteria. *Id.* at 421-22.

a. Reversal

In the circumstances discussed below, where VA has failed to abide by the required procedures, the Court has held that reversal of the Agency decision and reinstatement of the original disability rating is the appropriate remedy. Although early decisions of the Court did not outline the reasons for doing so, *see, e.g.*, *Lehman v. Derwinski*, 1 Vet.App. 339, 343 (1991), the Court in *Schafrath v. Derwinski* explained that the Court, acting under 38 U.S.C. § 4061(a)(3)(D), had in previous cases ordered reinstatement of the disability rating and that "[t]his approach finds support by analogy in the special procedural prerequisites [found in 38 C.F.R. § 3.105(e), (g), (h) regarding notice and an opportunity to present evidence] . . . which VA regulations establish must be met before a rating reduction may be effectuated," and "[i]t is implicit in these regulations that a service-connected rating reduction is invalid if these procedures are not followed." 1 Vet.App. 589, 595-96 (1991); *see* 38 U.S.C. § 4061(a)(3)(D) (1991) (recodified at 38 U.S.C. § 7261) (the Court shall "hold unlawful and set aside decisions . . . issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board found to be . . . without observance of procedure required by law"). The Court concluded that, because a veteran "should not be subjected

---

[5] 38 C.F.R. § 4.7 provides that, "[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." 38 C.F.R. § 4.7 (2020).

to the effects of an unlawful rating reduction," such a "reduction must be vacated and the prior rating restored." 1 Vet.App. at 596.

Following that reasoning, the Court has held that reversal and reinstatement is the appropriate remedy where VA has not provided the procedural protections afforded in § 3.105(e), because failure to afford notice and an opportunity to present additional evidence as outlined in that regulation "deprive[s a veteran] of the regulatory process that VA created to help veterans adjust to a reduction in disability compensation payments and to submit evidence or argument to contest such an action." *Murphy v. Shinseki*, 26 Vet.App. 510, 516 (2014). The Court has also reversed where a Board decision was in contravention of the special protections in § 3.343 because it upheld the reduction of a total disability rating based on multiple examinations that did not reflect a material improvement, *Hohol v. Derwinski*, 2 Vet.App. 169, 172 (1992), or based on a single examination where all of the record evidence did not support the reduction, *Dofflemyer v. Derwinski*, 2 Vet.App. 277, 281 (1992).

Additionally, the Court has found reversal to be warranted in certain circumstances where the Agency rendered a decision that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because VA did not afford the claimant special regulatory protections required for rating reductions and imposed an inappropriate standard of proof. For instance, in *Brown*, the Court "set . . . aside as 'not in accordance with law'" a Board decision that failed to comply with § 3.344(a) and "reverse[d] the applicable standard of proof by requiring the claimant to prove by a preponderance of evidence" that he was entitled to a rating that had been reduced. 5 Vet.App. at 421-22 (quoting 38 U.S.C. § 7261(a)(3)(A) (1991) (the Court shall "hold unlawful and set aside decisions . . . issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law")); *see Hedgepeth v. Wilkie*, 30 Vet.App. 318, 326-29 (2018) (reversing and reinstating where the Board failed to comply with §§ 3.343 and 3.344 and reversed the burden of proof); *Kitchens v. Brown*, 7 Vet.App. 320, 324-25 (1995) (reversing and reinstating where the Board reduced a rating without complying with § 3.344 and reversed the burden of proof); *Dofflemyer*, 2 Vet.App. at 279-82 (reversing and reinstating where the Board failed to comply with §§ 3.343 and 3.344 and reversed the burden of proof); *Karnas v. Derwinski*, 1 Vet.App. 308, 310-11, 314 (1991) (reversing and reinstating where the Board clearly erred in determining, without evidentiary support and in contravention of § 3.343, that there was material improvement

in the condition), *overruled on other grounds by Kuzma v. Principi*, 341 F.3d 1327 (Fed. Cir. 2003).

### b. Remedy Other than Reversal

On the other hand, in *Peyton v. Derwinski*, the Court remanded for readjudication where "informed judicial review . . . [was] not possible." 1 Vet.App. 282, 285 (1991).[6] In that regard, the Court concluded that the Board provided inadequate reasons or bases for its decision upholding the RO's reduction of the appellant's psychiatric disability rating because the Board did not evaluate certain lay statements, failed to comment on the appellant's full psychiatric history, and did not discuss whether 38 C.F.R. §§ 3.344, 4.127, and 4.128 were applicable. 1 Vet.App. at 286-87. The Court found that, "[b]ased on the record in this case, certain aspects of [those] regulations . . . *may be* applicable to this case" and instructed that, "[o]n remand, the Board should consider and apply the . . . regulations, or if it finds them inapplicable it should state the reasons for that finding." *Id.* at 287 (emphasis added). Then, in *Murincsak v. Derwinski*, the Court vacated the Board's decision and remanded after noting that a prior final RO decision had reduced a rating without compliance with §§ 3.343 or 3.344 but questioning the Court's jurisdiction to review that error. 2 Vet.App. 363, 369 (1992).

And, more recently, the Court affirmed a Board reduction decision after concluding that the Board complied with the general regulatory provisions regarding rating reductions but did not adhere completely to the special protections for total ratings. *Faust v. West*, 13 Vet.App. 342, 351, 356 (2000). In discussing the special protections for 100% ratings, the Court found that the Board failed to apply § 3.343—in part, the Board "reiterat[ed] the contents of, but [did] not apply[], paragraph (a)"—which would generally require reversal and reinstatement of the rating. *Id.* at 352. However, the Court found no prejudice because the Board made findings that meet the requirements of § 3.343(a) and were supported by a plausible basis, and because § 3.343(c) did not apply to the claim. *Id.* at 353-57. In light of those findings, the Court held that the Board decision to reduce the disability rating was not clearly erroneous. *Id.* at 357.

---

[6] To the extent that the appellant may be contending that *Peyton* is in conflict with other precedential decisions, Motion at 6-8, a panel of the Court may not overturn another panel decision, *see Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992). However, as discussed below, the Court's decision today does not rest on the continued viability of *Peyton*.

*2. Application*

a. Board Error

As an initial matter, the appellant does not challenge the Board's finding that "[t]here was clear improvement in the objectively determined neurological test findings" for each of his polyneuropathy disabilities or otherwise contend that there has not been an actual improvement in his diagnosed conditions.[7] R. at 9, 13. The appellant's dispute is limited to whether the improvement in his polyneuropathies has resulted in an improved ability to function under the ordinary conditions of daily life. As to that question, the parties agree that the Board failed to consider specific evidence and explicitly determine whether there was an improvement in the appellant's ability to function under the ordinary conditions of life and work. Appellant's Br. at 4-6; Secretary's Br. at 9.

The Court agrees with the parties that the Board erred. Notably, the Board discussed its obligation to find not only actual improvement in the condition, but that such improvement reflected an improvement in the ordinary conditions of life and work. R. at 7. As the appellant asserts, the Board began the analysis prescribed in *Brown*, but stopped short by failing to "fully apply" it. Reply Br. at 2; *see* Appellant's Br. at 4-6. Additionally, the Court will accept the Secretary's concession that the Board failed to consider favorable evidence in reaching its determination. Secretary's Br. at 9 (citing R. at 448-49).

b. Remedy

Having determined that the Board here committed error, the Court must assess whether remand or reversal is the appropriate remedy. In that regard, the appellant contends that, by failing to make the above determination, the Board applied an erroneous legal standard and thus failed to observe applicable law. Appellant's Br. at 4-6; Reply Br. at 1-4; Motion at 8-9. He further argues that the Board's error here resulted in an implicit shifting of the burden of proof because it "placed [him] in a position to have to demonstrate that his disability continued to affect his ability to function under the ordinary conditions of life and work." Reply Br. at 2. But, he argues, the characterization of the Board's error is immaterial, because this Court's caselaw requires reversal

---

[7] The Court notes that, although the Secretary concedes a reasons or bases error in this regard, Secretary's Br. at 9, the appellant has not sought either remand or reversal on the basis of this Board finding and the Court will thus not address it. *See Robinson v. Peake*, 21 Vet.App. 545, 554 (2008) (presuming that "an experienced attorney in veteran's law, says what he means and means what he says"), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

and reinstatement of the ratings where Board error is made in "the context of a reduction decision." Motion at 2-3. The Secretary maintains that remand, not reversal, is appropriate because the Board did not commit the types of errors warranting reinstatement. Secretary's Br. at 11-14.

Although the Court's reversal caselaw has generally been limited to the circumstances discussed above, the Court now concludes that the Board's failure entirely to address, as required by *Brown*, whether the improvement in the disability reflects an improvement in the ability to function under the ordinary conditions of life and work, also requires reversal of a rating reduction. The crux of the Secretary's argument for remand is that the Board simply provided inadequate reasons or bases for its decision. Secretary's Br. at 11-13. However, the Court finds the Board's error here comparable to those identified in the Court's caselaw, albeit for protected ratings, as requiring reversal. Particularly persuasive is the Court's discussion in *Brown*, where the Court held that failing *to discuss* certain elements of § 3.344 constituted reversible error. In *Brown*, the Court concluded that the Board "fail[ed] to satisfy the § 3.344(a) requirements that must be met before the . . . rating may lawfully be reduced," because "[t]he Board did not make any specific finding that the veteran's condition had actually improved, let alone the finding required by § 3.344(a) that there had been 'material improvement' that was 'reasonably certain . . . [to] be maintained under the ordinary conditions of life.'" 5 Vet.App. at 420 (quoting 38 C.F.R. § 3.344(a)). Here, although it is undisputed that § 3.344(a) does not apply, *Brown* established that two factual findings must be made for a valid reduction of a non-protected disability rating: (1) actual improvement in the disability and (2) that improvement reflects "improvement in the . . . ability to function under the ordinary conditions of life and work." *Id.* at 421. Similar to *Brown*, the Board here failed to make a finding necessary for the lawful reduction of a disability rating.

Moreover, although the Secretary relies on *Faust*, *Murincsak*, and *Peyton* to argue that remand is nonetheless the proper remedy, those cases do not preclude our holding today. First, in *Faust*, the Court found that the Board did not explicitly cite §§ 3.343(a) or (c) in its analysis, yet "the Board did make a finding in accordance with the terms of [§ 3.343(a)]," 13 Vet.App. at 353, and the failure to discuss paragraph (c) was harmless because "the evidence overwhelmingly shows that that regulation . . . affords him no protection for his 100% rating," *id*. at 356 (emphasis omitted). That opinion thus does not dictate the result where the Board acknowledged that it was required to find that an improvement in the appellant's disabilities reflected an improvement in the ordinary conditions of life and work, but failed to make any such findings. And, because the

11

Secretary concedes that remand is warranted for the Board to discuss favorable evidence in that regard, there is no dispute here that the Board's error is not harmless. *Cf. Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (holding that remand is unnecessary in the absence of demonstrated prejudice).

In *Murincsak*, the appellant's disability rating for schizophrenic reaction had been reduced from 100% to 70% in a final May 1981 rating decision. 2 Vet.App. at 365. In reviewing the issue on appeal—entitlement to an increased disability rating for schizophrenic reaction—the Court noted that an allegation of clear and unmistakable error (CUE) in the May 1981 reduction had been raised and concluded that there was CUE in that decision, but acknowledged that its jurisdiction to review the matter, given the Board's failure to do so, was pending before a panel of the Court in another case. *Id.* at 368-69. Having found remandable error with the increased rating claim, the Court noted that "on remand the Board may further wish to take into account [regulations for revising or reconsidering a decision based on CUE] in accordance with the Court's resolution in [the other panel case]." *Id.* at 369. Put differently, the Court in *Murincsak* did not remand the rating reduction issue, but rather, because of the jurisdictional uncertainty, encouraged the Board to consider revisiting the final RO reduction decision when readjudicating the increased rating claim. Thus, *Murincsak* provides no barrier to our holding, where there is no dispute regarding the Court's jurisdiction over the matter.

Last, *Peyton* was issued before the Court in *Brown* established the two-part test relevant here, and, thus, it cannot answer the question of what the appropriate remedy should be for failing to conduct part of the *Brown* analysis. To be clear, it may be that a reasons or bases error in a rating reduction case, under different circumstances, would warrant a remand rather than reversal. But *Peyton* does not preclude our holding as to the proper remedy where the Board fails to make one of the necessary factual findings required by *Brown* to effectuate a valid rating reduction.

As a final matter, the Court notes that, although the appellant contends that *all* Board errors in a reduction case require reversal and reinstatement, as discussed above, the Court has in some circumstances concluded that a remedy other than reversal and reinstatement is appropriate even after identifying Board error. *See, e.g.*, *Faust*, 13 Vet.App. at 356-57. However, the Court need not decide today where the line must be drawn between remandable and reversible Board errors because, here, we conclude that the Board's total failure to make the finding required by *Brown* is the type of error requiring reversal.

Accordingly, the Court will reverse the Board's decision and remand the matter with the direction that the Board reinstate the appellant's disability ratings. *See Schafrath*, 1 Vet.App. at 596. Given this disposition, the Court need not address any remaining arguments and issues raised by the appellant. *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) (noting that "the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion"); *Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order). On remand, the Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.

### III. CONCLUSION

The appeal of the Board's April 25, 2018, decision denying entitlement to disability compensation for a seizure disorder is DISMISSED. After consideration of the parties' pleadings and a review of the record, the Board's decision finding that the reductions in disability ratings for right arm polyneuropathy, left arm polyneuropathy, right leg polyneuropathy, and left leg polyneuropathy were proper is REVERSED; the appellant's 30% disability rating for right arm polyneuropathy, and 20% disability ratings each for polyneuropathy of the left arm and right and left legs are reinstated; and the matters are REMANDED for further proceedings consistent with this decision.

13